### A01A1666. ASHMORE v. FOSTER.
(561 SE2d 228)

PHIPPS, Judge.

Sherry Foster sued her next-door neighbors, Neil Ashmore and his wife, alleging malicious arrest and malicious prosecution. The trial court directed a verdict in favor of Ashmore's wife, and the jury found in favor of Sherry Foster. Ashmore appeals, contending that

---

[28] OCGA § 33-36-3 (2) (B) (iv).

there was insufficient evidence of malicious arrest or malicious prosecution and that the trial court erred in refusing to admit certain videotapes. We find that the evidence was sufficient to support the jury's verdict and that the trial court did not abuse its discretion in disallowing the videotapes into evidence. We therefore affirm.

Where a jury returns a verdict and it has the approval of the trial judge, we must affirm on appeal if there is any evidence to support it.[1] We construe the evidence with every inference and presumption in favor of upholding the verdict, even where the evidence is in conflict.[2]

Viewed in this light, the evidence showed that in February 1997, the Ashmores moved into a house on property adjacent to the home of Sherry Foster and her husband, Rick. The Ashmores accessed their property via a gravel roadway owned and maintained by the Fosters. Rick Foster testified that there was friction between the couples almost immediately. In January 1997, the Fosters had begun clearing a portion of their property to build a new house. Their original house was approximately 300 feet from the Ashmores' property, but the new site was much closer, with a driveway that was approximately ten to twenty feet from the boundary line. After the clearing began, Ashmore approached Rick Foster and offered to purchase a portion of the roadway. Rick Foster declined. Later, in April 1997, when the Fosters applied for a variance to construct their new home, Ashmore's wife attended the hearing and opposed the variance. The variance was granted, however, and construction began.

The relationship between the neighbors deteriorated. Rick Foster told of an encounter with Ashmore. Some of the property pins demarcating the property line between the roadway and Ashmore's property had been disturbed, and Rick Foster hired surveyors to replace them. While the surveyors were working, Ashmore's wife called the police to the site, and the surveyors left, promising to return to complete the work. Later, when Rick Foster was examining the area to determine whether the surveyors had completed replacing the pins, Ashmore drove up, yelled at him, "[D]on't touch those boundary pins," and threatened to have him arrested. According to Rick Foster, Ashmore then gave him three options: sell that portion of the road to him, stay off that property, or Ashmore would keep him in court over it.

Rick Foster described another incident. In May 1998, he saw Ashmore using a Bobcat tractor to move gravel from one area of the roadway to another and walked to the scene to determine what Ash-

---

[1] *Willis v. Brassell*, 220 Ga. App. 348 (469 SE2d 733) (1996).
[2] Id.

more was doing. Sherry Foster soon followed in her van, parking it across the road from the Bobcat. Ashmore, however, would not stop to talk, but continued to operate the Bobcat. When the bucket on the Bobcat hit the mirror of Sherry Foster's parked vehicle, the Fosters left and called the police.

Sherry Foster told of an incident in which she was working near the construction site in a corner of her property that was adjacent to the Ashmores' property. When she turned to leave the area, "[Ashmore] was in [her] face with a camera." She tried to ignore him, but Ashmore began circling her, snapping her picture, and yelling that she would be put in jail.

In June 1998, Rick Foster was using a riding lawn mower to maintain the roadway. As he was working near the boundary line, the Ashmores called the police and complained that he had driven off the roadway and onto their property. Based on that incident, Ashmore applied for an arrest warrant against Rick Foster for criminal trespass. But it appeared that Rick Foster had stayed on his property. Thus, after several court dates, Ashmore dismissed the case. The disposition order stated that Ashmore did so "to achieve a new hearing for the more proper charge of stalking."

The day following the dismissal, Sherry Foster was arrested. Ashmore had sworn out an arrest warrant against her for stalking him, including when he had taken pictures of her. The case was assigned to an assistant county solicitor-general, who testified that using information from the warrant, from conversations with the Ashmores, and from his own investigation, he added other charges. The accusation charged Sherry Foster with: (1) stalking Ashmore, (2) stalking Ashmore's wife, (3) assaulting Ashmore, (4) criminal trespass, and (5) reckless driving. After a trial, a jury found her not guilty of all charges.

Deborah Stephens, Sherry Foster's friend who had attended the criminal trial, testified in the instant case that during the criminal trial, she observed the Ashmores "sitting real close." Stephens testified that for about 15 to 20 minutes, Ashmore was "forceful[ly]" instructing his wife, "you say this, you do this," including "say . . . [']Sherry came out swinging her arms, screaming.[']" Ashmore's wife was writing down what her husband was saying. When Stephens later heard Ashmore's wife on the witness stand repeating exactly what Ashmore had told her, she reported what she had observed to the court, who directed her to take the stand and testify about what she had seen and heard.

1. Ashmore argues that the evidence was insufficient to support the verdict for malicious prosecution. To prevail on a claim of malicious prosecution, a plaintiff must prove: (1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant,

accusation, or summons; (3) termination of the prosecution in favor of plaintiff; (4) want of probable cause; (5) malice; and (6) damage to the plaintiff.[3] Ashmore argues that the decision to prosecute was made solely by the assistant solicitor-general without any consultation with him, that there was probable cause, and that there was no malice.

Ashmore supports this contention by pointing to his trial testimony. He testified that Sherry Foster began harassing him and his wife after he testified in a warrant application hearing in March 1998 against Sherry Foster and on behalf of Rick Foster's brother, Russell. Russell Foster, who also lived on property along the gravel road, had accused Sherry Foster of stalking.[4] According to Ashmore, after that, she would stand or park outside his house and stare at the house "many times in one day, many days a week, for long durations," although he never saw her on his property. He stated that it was Sherry Foster's harassment that led him to offer to purchase the Fosters' property. Ashmore's recollection of the "Bobcat" incident differed from Rick Foster's. He stated that Sherry Foster had used her van to block him as he was attempting to maintain the roadway. Ashmore's account of the "picture taking" episode also differed from Sherry Foster's. He stated that he saw Sherry Foster standing approximately 50 feet from his front door that day and attempted to take photographs of her conduct, as he had been instructed to do by police. As he was snapping her picture and circling around her, she charged him and began swinging her arms at him.

(a) We consider first whether Ashmore instigated a prosecution for a criminal offense.

> The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for . . . malicious prosecution; in the latter case there is not.[5]

Having reviewed the record in a light favorable to the verdict, we conclude that the evidence authorized the jury to determine that Ashmore instigated Sherry Foster's prosecution.[6] And although Ashmore urges that he played no role in any of the charges except the

---

[3] OCGA § 51-7-40; *Willis*, supra at 350.

[4] This warrant application was ultimately dismissed.

[5] (Citations omitted.) *Ginn v. C & S Nat. Bank*, 145 Ga. App. 175, 178 (3) (243 SE2d 528) (1978); *Holmes v. Achor Center*, 249 Ga. App. 184, 191 (2) (b) (547 SE2d 332) (2001).

[6] See *Willis*, supra at 351 (1) (a).

initial stalking charge, the jury was entitled to believe the testimony of the assistant county solicitor-general that the additional charges were added after, among other things, conversations with the Ashmores.

(b) "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused."[7] Here, the facts were disputed, leaving for the jury to decide whether the circumstances created an honest and reasonable belief in Ashmore's mind that there was probable cause for Sherry Foster's prosecution. And the evidence here presented a sufficient basis for finding that there was no probable cause to arrest her.

(c) "Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured."[8] Malice may be inferred from a want of probable cause,[9] and we have determined in Division 1 (b) that the evidence authorized the jury to find a lack of probable cause. We conclude that the evidence authorized the jury to find that Ashmore acted with malice.

2. Ashmore contends that there is insufficient evidence to support a verdict of malicious arrest. But there was no verdict of malicious arrest. The record shows that the jury was charged on malicious prosecution and was not charged on malicious arrest.

3. Ashmore contends that the trial court erred in refusing to admit several videotapes into evidence. He argues that the tapes recorded a course of conduct on Sherry Foster's part that would have refuted certain elements of her malicious prosecution claim. The tapes recorded only incidents that occurred after the criminal prosecution, and the trial court did not abuse its discretion in ruling that what Sherry Foster had done subsequent to the criminal prosecution was not relevant.[10]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED MARCH 4, 2002.

*Steven E. Conner, Edwin Marger,* for appellant.
*Peevy & Lancaster, Donn M. Peevy, Lucas O. Harsh,* for appellee.

---

[7] OCGA § 51-7-43.
[8] OCGA § 51-7-2.
[9] *Fleming v. U-Haul Co. &c.,* 246 Ga. App. 681, 684 (3) (541 SE2d 75) (2000).
[10] See *Powell v. Alan Young Homes,* 251 Ga. App. 72, 74 (1) (554 SE2d 186) (2001); see generally *Casillas v. State,* 233 Ga. App. 752, 755-756 (1) (505 SE2d 251) (1998).