A02A0234. CHEROKEE COUNTY v. GREATER ATLANTA HOMEBUILDERS ASSOCIATION, INC.
A02A0235. GREATER ATLANTA HOMEBUILDERS ASSOCIATION, INC. et al. v. CHEROKEE COUNTY.
(566 SE2d 470)

MILLER, Judge.

Greater Atlanta Homebuilders Association, Inc. challenged Cherokee County's impact fee ordinance (per application) as unconstitutional and contrary to the enabling statute. The crux of the challenge rested on the county's failure to impose impact fees on new developments in incorporated portions of the county even though those developments would benefit from new facilities constructed with the impact fees obtained from new developments in unincorporated portions. We hold that since statutorily the county lacked the power to impose impact fees on new developments in incorporated portions, the county acted rationally and reasonably in imposing impact fees on only those developments over which it had the power to impose fees. Accordingly, we uphold the impact fee ordinance in

toto and reverse that portion of the trial court's judgment holding otherwise.

Effective May 2000, Cherokee County enacted an impact fee ordinance that, closely tracking the language of OCGA § 36-71-1 et seq., required persons constructing new developments in the county to pay an impact fee before receiving a building permit. Cherokee County Ordinance Code § 25. The varying amounts of the fees, which were to be used to construct new facilities in six infrastructure areas (libraries, parks/recreation, roads, sheriff's patrol, public safety, and fire protection), hinged on the Capital Improvements Element (the "CIE") portion of the Cherokee County Comprehensive Plan. The CIE calculated service areas for the six areas, the level of service in those areas, and the projected facilities needed to accommodate growth. Subtracting millions in sales tax revenues to be derived from new growth that was anticipated to assist in paying for new facilities, the CIE calculated the impact fees for each type of new development. The calculations were based on the countywide population and county-wide growth and assumed that all new developments of the county (whether in incorporated or unincorporated portions) would pay impact fees.

The Greater Atlanta Homebuilders Association, representing local developers, sought a declaratory judgment that the ordinance as applied did not comport with the enabling statute and violated due process and equal protection principles of the Georgia and federal constitutions. After denying the Association's motion for summary judgment, the court conducted a bench trial and upheld the ordinance as constitutional and as consistent with the statute. It further upheld the CIE impact fees calculated for the sheriff's patrol, public safety, and fire protection services, but it found that the CIE impact fees calculated for libraries, parks/recreation, and roads violated due process and equal protection principles. The court found offensive that new developments in incorporated portions of the county (on which the ordinance did not impose an impact fee) would benefit from the new facilities that would be built with the impact fees received from new developments in unincorporated portions. The court restrained the county "from further collecting impact fees for the categories of libraries, transportation or road services, and parks and recreation, until such time as a system can be devised to exclude non-feepayors from benefitting, or until 'intergovernmental agreements' for collection of like or substitute fees can be arranged."

Both parties appealed to the Supreme Court of Georgia, which transferred the cases to this Court on the basis that the cases required "only the application of plain and unambiguous provisions of the Constitution to the facts." In Case No. A02A0234, the county appeals the ruling that portions of the CIE were unconstitutional,

and in Case No. A02A0235, the Association appeals the ruling that the portions of the CIE and ordinance were constitutional and in conformance with the enabling statute. We hold that the entire ordinance and CIE are constitutional and in conformance with the enabling statute, and we therefore reverse in Case No. A02A0234 and affirm in Case No. A02A0235.

### Case No. A02A0234

1. The county argues that the impact fees imposed for libraries, parks/recreation, and roads conform to due process and equal protection principles and are therefore constitutional. Since the county imposes the fees equally on all those subject to its building permit authority, we agree.

The enabling statute authorizes counties and cities that have adopted a CIE to impose (by ordinance) impact fees as a condition of development approval. OCGA § 36-71-3 (a). The fees are not to exceed a proportionate share of the cost of system improvements (OCGA § 36-71-4 (a)) and are to be calculated on the basis of (i) service areas defined by the county on the basis of sound planning or engineering principles (OCGA §§ 36-71-2 (17); 36-71-4 (b)) and (ii) levels of service for public facilities applicable to existing development and to new growth and development. OCGA § 36-71-4 (c). The Cherokee County Ordinance as enacted closely tracks this language. Cherokee County Ordinance Code § 25-3, Par. 58. For specific calculations, the ordinance relies on the CIE portion of its comprehensive plan. Id. at Par. 62.

With regard to libraries, parks/recreation, and roads, the CIE established the service area for each category as countywide and calculated levels of service as follows: (i) for libraries, 1.343 square feet of library facility and 2.9761 books for each housing unit; (ii) for parks/recreation, 10.54 acres of park for every 1,000 housing units; and (iii) for roads, a "D" level of service (high density but stable flow) based on a nationally recognized scale. To maintain these levels of service with anticipated new growth, the CIE determined the new facilities needed for the entire county, their costs (less those capital improvement funds anticipated from sales tax revenue generated from new growth), and the per unit fees that would represent a proportionate share of those costs generated by each new development anticipated in the county (whether in an incorporated or unincorporated portion of the county).

The Association's primary complaint about the impact fees is that the county imposed the fees only on new developments in unincorporated portions of the county, allowing new developments in incorporated portions of the county, which would also benefit from

the countywide system improvements, a "free ride." The court below agreed with the Association and found that such violated the due process and equal protection principles of the Georgia and federal constitutions.[1]

"The constitutional guaranty of equal protection requires that all persons shall be treated alike under like circumstances and conditions. However, it does not prevent a reasonable classification relating to the purpose of the legislation." (Citations omitted.) *Reed v. Hopper*, 235 Ga. 298, 300 (5) (219 SE2d 409) (1975). Indeed, a statutory classification, such as the one at issue here, that neither proceeds along suspect lines nor infringes fundamental constitutional rights, "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (Citations omitted.) *Fed. Communications Comm. &c. v. Beach Communications*, 508 U. S. 307, 313 (II) (113 SC 2096, 124 LE2d 211) (1993). Similarly, under substantive due process, "[w]here . . . it is not a fundamental right that is infringed and the person complaining is not a member of a suspect class, the government action is examined under the rational basis test, the least rigorous level of constitutional scrutiny. [Cit.]" *Old South Duck Tours v. Mayor &c. of Savannah*, 272 Ga. 869, 872 (2) (535 SE2d 751) (2000).

"The rational basis test requires that the classification drawn by the legislation be reasonable and not arbitrary, and rest upon some ground of difference having a fair and rational relationship to the legislation's objective, so that all similarly situated persons are treated alike." (Citation omitted.) *Old South Duck Tours*, supra, 272 Ga. at 873 (3). Parties challenging legislation on these grounds must show that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decisionmaker." (Citations and punctuation omitted.) Id. "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid." (Citation and footnote omitted.) *Massachusetts Bd. of Retirement v. Murgia*, 427 U. S. 307, 314 (II) (96 SC 2562, 49 LE2d 520) (1976).

Here the enabling statute authorized Cherokee County, one of the fastest growing counties in the State of Georgia, to impose an

---

[1] The equal protection guarantees of the Georgia and federal constitutions are coextensive. *Ambles v. State*, 259 Ga. 406, 407 (2) (383 SE2d 555) (1989). The due process guarantees are substantively identical. Compare Fifth Amendment to the U. S. Constitution with 1983 Ga. Const., Art. I, Sec. I, Par. I.

impact fee as a condition of development approval, which fee was to be collected at the time the county issued a building permit. OCGA §§ 36-71-3 (a); 36-71-4 (d). The county's authority to require development approval through a building permit, however, is restricted to development in unincorporated portions of the county. OCGA § 36-13-1. Thus, the General Assembly has limited Cherokee County's authority to impose impact fees to the unincorporated portions of the county. It has authorized *but not required* counties to enter into intergovernmental agreements with municipalities to jointly collect impact fees to pay for system improvements benefitting both. OCGA § 36-71-11.

The Association has been careful not to challenge the constitutionality of the enabling statutes. Rather, it has challenged the county's impact fees as unconstitutional on the ground that new developments in incorporated portions of the county do not pay impact fees, even though those developments will benefit from the fees paid by new developments in unincorporated portions.

The Association's argument falls of its own weight. The county has imposed an impact fee on all new developments within the unincorporated portions of the county, which is all it has the power to do. It has not made a "classification" exempting incorporated developments from the fees, for by statute the county simply has no power or control over developments in municipal limits. The reason new developments in municipalities do not pay the fees is not because of any legislative distinction or action by the county, but results from decisions by the municipalities not to impose such fees and not to enter into optional intergovernmental agreements with the county regarding such. Thus, this "classification" (if it can be called such) has a rational basis, which is simply that the county has no power to impose impact fees on those developing in incorporated areas. It imposes fees on all it can.[2] If the county had the authority to impose fees on municipal development and nevertheless chose to impose fees only in unincorporated areas, our analysis could well reach a different conclusion. See *City of Lithonia v. DeKalb County Bd. of Ed.*, 231 Ga. 150, 153 (200 SE2d 698) (1973); *Richmond County v. Richmond County Business Assn.*, 228 Ga. 281, 282-283 (2) (185 SE2d 399) (1971). The Association's citation to *St. Johns County v. Northeast Florida Builders Assn.*, 583 S2d 635 (Fla. 1991), for a contrary proposition is unavailing, as this decision of the Florida Supreme Court is not binding nor precedential in Georgia.

---

[2] Cities have recourse under the intergovernmental agreements that can be formulated under the statute.

Finally, it is undisputed that those paying the fees will receive the benefits of that burden through system improvements (as will some who do not pay), similar to a situation where people who pay a certain tax benefit from the tax but so do others who do not pay the tax. *Youngblood v. State of Ga.*, 259 Ga. 864, 865-866 (2) (388 SE2d 671) (1990), held: "The fact that others may consequently benefit without having paid any tax does not render the Act violative of state and federal constitutional due process and equal protection guarantees. [Cit.]"

Accordingly, the county's ordinance and CIE imposing specified fees for system improvements for libraries, parks/recreation, and roads did not violate due process or equal protection guarantees. The court erred in holding otherwise, and we therefore reverse this portion of the court's judgment. This also reverses the trial court's judgment to the extent it enjoins the county from collecting any portions of the impact fees or from disbursing them to pay for authorized improvements.

## Case No. A02A0235

The Association cross-appeals that portion of the court's order upholding those fees relating to sheriff's patrol, public safety, and fire protection. The court had found that the cities were either paying fees or paying by service in-kind for the county's facilities in these areas and therefore the county's imposition of impact fees on only the unincorporated portions of the county did not violate due process or equal protection principles. The Association disputes this and further challenges the judgment on the grounds that (i) the court had earlier failed to grant the Association summary judgment despite the failure of the county to submit contradicting evidence, (ii) the ordinance as applied did not comply with the enabling statute, and (iii) the county improperly designated levels of service and improperly calculated fees.

2. "The Association contends the trial court erroneously denied it summary judgment, asserting that it made its prima facie case and [the county] failed to respond. Because the case went to trial and the court rendered judgment, this contention is moot." (Footnote omitted.) *Southland Owners Assn. v. Myles*, 252 Ga. App. 522, 524-525 (3) (555 SE2d 530) (2001).

3. The equal protection and due process challenges fail for the same reasons set forth in Division 1 above. Moreover, the factual basis for the challenges — namely that developments in incorporated areas were not paying any fees but were receiving the benefits — fails in light of the court's findings (supported by the evidence) that municipal citizens were paying fees or services in-kind. For example,

the cities of Woodstock and Canton have their own fire protection systems, which provide backup service to the county just as the county provides backup service to them. City police departments similarly provide and receive mutual aid to and from the county sheriff's patrol. And with regard to public safety, the cities pay jail fees when they use the county jail to incarcerate municipal offenders.

4. The Association contends that the county ordinance and CIE do not comply with the enabling statute, which requires that the impact fees not exceed a proportionate share of the cost of system improvements. See OCGA § 36-71-4 (a). "Proportionate share" is defined as "that portion of the cost of system improvements which is reasonably related to the service demands and needs of the project." OCGA § 36-71-2 (15). Since fees were coming from only the unincorporated portions of the county, the Association argues that the fees would pay for the entire cost of the new system improvements and were therefore disproportionately high.

The Association's argument ignores the careful calculation procedures employed by the county in its CIE to ensure otherwise. The county projected system improvements based on growth throughout the entire county, and then calculated impact fees on the basis that *all* new developments throughout the county, whether in incorporated or unincorporated areas, would pay impact fees to cover these new improvements. Since the incorporated developments are not currently paying impact fees to the cities, there will likely be a shortfall. Nevertheless, the existence of a shortfall does not diminish the fact that the fees as calculated are not disproportionate but are based on a procedure that accounted for each project's projected impact on the need for system improvements. A probable shortfall is a fiscal problem of the county that will need to be remedied through some avenue. The calculation of the fee itself, however, was based on the project's actual proportional impact to the system. If the county had simply wanted to raise sufficient revenue to cover all improvements and had raised the impact fees to account for no revenue coming from incorporated developments, the resulting extra charge on unincorporated developments could possibly be argued as disproportionate. The county did not do this, and therefore the Association's argument that the unincorporated developments are paying a disproportionate share fails.

5. The Association claims that the county improperly calculated the impact fees. Specifically, the Association points to OCGA § 36-71-4 (r), which requires that the fees be calculated on a basis "which is net of credits for the present value of revenues that will be generated by new growth and development based on historical funding patterns and that are anticipated to be available to pay for system improve-

ments, including taxes, assessments, user fees, and intergovernmental transfers."

Evidence showed and the court found that the county credited the anticipated revenues. Grants, state funds, and millions in sales tax revenues from growth were credited to the cost of the projects. The Association claims that in the past impact fees were not a source of system improvement funds and therefore the county could only calculate the impact fees as if the general tax revenues and other sources were assumed to pay as much as they did in the past. If adopted, this approach would defeat a key purpose of the impact fee statute, which is to allow a *new* source of funding system improvements necessitated by growth and to have that growth pay its proportionate share of the public facilities needed to serve that growth. See OCGA §§ 36-71-1 (b) (4); 36-71-3 (a). Since this is something not done in the past, a county may assume that along with historical funding sources, impact fees *will also be used* to pay for capital improvements, which by definition would reduce the historical share that other funding sources pay for those improvements. Otherwise impact fees would *never* be justified. We agree with the trial court that the county did not abuse its discretion in this regard.

6. The Association also complains that the levels of service calculated by the county for sheriff's services and fire protection services were in error. The county determined that (i) for sheriff's services, the current level of service was 98.31 square feet of precinct space per 1,000 population, and (ii) for fire protection services, the current level of service (as augmented by five new fire stations already funded and under construction) was 550.35 square feet of facility and 0.3337 fire trucks per 1,000 population. The Association points to the testimony of the sheriff's department representative and of the fire department representative that neither used square-footage-of-facility-to-population ratios to determine levels of service, but rather focused on response time or workload (matters driven by numbers of personnel). This testimony, however, is irrelevant since impact fee calculations focus not on needed personnel but on needed *facilities* to accommodate the new growth. The county therefore had a rational basis for using facility square footage to determine levels of service for impact fee purposes. We agree with the trial court that the county did not abuse its discretion in this regard.

Accordingly, we affirm the trial court's judgment on those issues raised in Case No. A02A0235. The overall effect of our decision in both cases is to uphold the entirety of the Cherokee County ordinance and CIE at issue.

*Judgment reversed in Case No. A02A0234. Judgment affirmed in Case No. A02A0235. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 13, 2002 —

*Jenkins & Nelson, Frank E. Jenkins III, Peter R. Olson, Robert M. Mahler,* for Cherokee County.

*Page, Scrantom, Sprouse, Tucker & Ford, Deron R. Hicks, George G. Boyd, Jr., Miller P. Robinson, James A. Balli,* for Greater Atlanta Homebuilders Association, Inc. et al.