A04A1338, A04A1339. CONDON et al. v. VICKERY et al.
(two cases).
A04A1340. CONDON et al. v. TOMLINSON et al.
(606 SE2d 336)

MIKELL, Judge.

These appeals arise from a longstanding dispute between adjoining property owners in McDonough. John J. Condon was cited for maintaining a nuisance by Henry County Code Enforcement Officer Arthur Weems based on complaints made by Condon's neighbor, James Charles Vickery. Condon was found guilty after a hearing in magistrate court, but his conviction was overturned on appeal by the superior court. Condon and his wife, Rebeccajean Condon, then filed a malicious prosecution action against Vickery, Weems, and Charlie Tomlinson, the director of the Code Enforcement Department (the "Department"). In three orders, the trial court granted summary judgment to all defendants and awarded attorney fees to Vickery. In Case No. A04A1338, the Condons appeal the summary judgment granted to Vickery, and in Case No. A04A1340, they appeal the summary judgment granted to Weems and Tomlinson. We consolidate those appeals for disposition in a single opinion and affirm the judgments. In Case No. A04A1339, the Condons appeal the attorney fee award. Because Vickery's motion was untimely, that judgment is reversed. The relevant facts follow.

The record shows that Mrs. Condon bought 27 acres of land, including a house, in 1992, and that at the time of the hearing, she and her husband raised approximately 14 head of cattle there. Vickery and his wife, Terry, built a home on an adjoining 10.7 acres in 1997. The Condons claimed that during construction, Vickery dumped debris on the Condons' property and changed the slope of the land, causing flooding. Mrs. Condon, the owner of record, sued Vickery as a result.

Vickery then claimed that Condon relocated a hay ring used to feed his cows directly across from Vickery's front door. Alleging that the odiferous patties deposited by the milling bovines created a nuisance, Vickery contacted the Department. Officer Weems was dispatched to investigate the complaint on December 3, 1998. Although the wind was blowing in the direction of Vickery's home, Weems detected no foul odor. Weems explained to Vickery that local zoning ordinances permitted Condon to raise livestock, and that although a pen or corral had to be placed at least 100 feet inside the fence, a hay ring did not. According to Weems's measurements, the hay ring was 75 to 80 feet inside the common fence, which was 107 feet from Vickery's front door. However, Weems did tell Vickery that he could pursue a nuisance complaint. Five days later, Vickery

contacted the office again to press ahead. Based on Vickery's complaint, Weems issued Condon a citation for maintaining a nuisance. A hearing was held on the citation in the Magistrate Court of Henry County. When asked at the hearing why he cited Condon, Weems testified that to constitute a nuisance, the conditions did not have to bother him; they just "had to bother somebody."

Vickery testified at the hearing that the odor, and the swarming flies, were worse on warm days, and that his children and their friends complained about the odor and the flies. Molly Willis, whose children play with the Vickerys' children, testified that "it smells like nasty baby diapers out there." Debbie West, who works with Mrs. Vickery at the Henry County Board of Education and has visited the Vickery home three or four times, testified that the odor was especially strong around the Vickerys' lake.

Condon testified that he relocated the hay ring so that he could observe the cattle from virtually every room in his house, especially his upstairs desk. Condon told the magistrate judge that he counts his cows "probably ten times a day." He also claimed that the property was an agricultural facility pursuant to OCGA § 41-1-7 and therefore exempt from the county nuisance ordinance. OCGA § 41-1-7 (c) states, in pertinent part, that "[n]o agricultural facility . . . shall be or shall become a nuisance, either public or private, as a result of changed conditions in or around the locality of such facility or operation if the facility or operation has been in operation for one year or more."

Based on evidence that the Condons' cattle breeding business had operated at a loss year after year, and that the couple earn a combined annual salary of approximately $194,000 as airline pilots, the magistrate court rejected Condon's reliance on the agricultural exemption and denied his motion to dismiss the citation. The court found Condon guilty of maintaining a nuisance and fined him $500 plus court costs. However, the court offered to reduce the fine to $100 if Condon moved the hay ring 500 feet away from Vickery's house within 48 hours. Condon appealed. The superior court reversed the magistrate court's judgment, holding that Condon's farm satisfied the criteria set forth in OCGA § 41-1-7 so that he was exempt from prosecution under the local nuisance ordinance. The court concluded that Condon's farm was an "agricultural facility" and that the nuisance action resulted from "urban sprawl," or a change in residential patterns around the facility.[1] Almost two years later, the Condons filed a malicious prosecution action.

---

[1] See *Herrin v. Opatut*, 248 Ga. 140, 141 (281 SE2d 575) (1981).

## Case Nos. A04A1338 and A04A1340

1. Due to the similarity of the enumerations of error asserted by the Condons in their appeals from the orders granting summary judgment to all three defendants on the malicious prosecution claim, we address those appeals together.

In order to prevail on a claim for malicious prosecution, a plaintiff must demonstrate that: (1) the prosecution was instituted maliciously, (2) without probable cause, and (3) has terminated favorably to the plaintiff.[2] In granting summary judgment to the defendants, the trial court ruled that Condon's conviction, although overturned on appeal, conclusively established probable cause. We agree.

"Want of probable cause is the gravamen of an action for malicious prosecution; and there can be no recovery by the plaintiff where there was any probable cause for the prosecution, even though it may appear that the prosecutor was actuated by improper motives."[3]

> The general rule is, that if there be a judgment of conviction in the criminal prosecution, or a judgment in favor of the plaintiff in the civil proceeding, in a court having jurisdiction of the parties and the subject-matter, such judgment, although subsequently reversed by an appellate tribunal, is conclusive evidence of probable cause for the prosecution or the civil proceeding complained of. Cases in which the judgment in the original action is obtained by fraud, perjury, or subornation are excepted from the operation of this general rule.[4]

Here, Condon alleges that the judgment in magistrate court was obtained by fraud or "an intentional corruption" of the judicial process, citing *Akins v. Warren*.[5] In that case, our Supreme Court held that to overcome the presumption of probable cause arising from the denial of a directed verdict of acquittal, the plaintiff must offer evidence that the prosecuting witness gave perjured testimony "of such a nature as to constitute the perpetration of a fraud upon the court" or committed an act "amounting to an intentional corruption of

---

[2] *J. C. Penney Co. v. Miller*, 182 Ga. App. 64, 66 (2) (354 SE2d 682) (1987).

[3] (Citation omitted.) *Davis v. Gilbert*, 67 Ga. App. 277, 278 (19 SE2d 920) (1942).

[4] *Ga. Loan & Trust Co. v. Johnston*, 116 Ga. 628, 631 (43 SE 27) (1902). See also *Hartshorn v. Smith*, 104 Ga. 235, 238 (30 SE 666) (1898) (a guilty verdict which is not procured by fraud, perjury, or subornation is conclusive on the issue of probable cause even if the conviction is later set aside on appeal).

[5] 258 Ga. 853 (375 SE2d 605) (1989).

the criminal trial," such as bribing the judge.[6]

In his lengthy affidavit, Condon averred that the defendants conspired to commit fraud on the magistrate court. Condon contended that Tomlinson pressured Officer Weems into issuing a citation because of an alleged friendship with Vickery. Contrary to Condon's averments, there is not a scintilla of evidence to support his conspiracy theory. It follows that the trial court did not err in granting summary judgment to all three defendants on the Condons' malicious prosecution claim.

2. The Condons additionally complain that the trial court reversibly erred in failing to hold a hearing on Weems's and Tomlinson's motion for summary judgment. This contention is meritless. Uniform Superior Court Rule (USCR) 6.3 provides that "oral argument on a motion for summary judgment shall be permitted upon written request made in a separate pleading bearing the caption of the case and entitled 'Request for Oral Hearing.' " In this case, the Condons did not file a separate pleading requesting oral argument. Rather, in responding to this motion for summary judgment, the Condons included a request for a hearing in their prayer for relief. "[A]bsent a written request in a separate pleading requesting an oral hearing, the trial court can properly hold no oral argument."[7] As the Condons failed to comply with USCR 6.3, the trial court did not err in failing to hold a hearing.

### Case No. A04A1339

3. The Condons appeal the trial court's order awarding Vickery $3,119.50 in attorney fees pursuant to OCGA § 9-15-14. The record shows that the Condons filed suit on May 7, 2002. Two days later, Vickery notified the Condons in accordance with OCGA § 51-7-84 of Vickery's intent to seek abusive litigation damages in the event that the Condons failed to dismiss the action. As noted above, the trial court ultimately granted summary judgment to Vickery. The order was filed on January 24, 2003. On February 27, 2003, Vickery's counsel sent Condon a letter by certified mail detailing his attorney fees of $2,594.50, and noting that the Condons could avoid the additional expense of a hearing by paying that amount. On March 3, 2003, Vickery filed a motion seeking to recover attorney fees and expenses pursuant to OCGA § 9-15-14. In opposition, the Condons alleged that the motion was premature because they had filed an

---

[6] Id. at 854 (3).

[7] *Herringdine v. Nalley Equip. Leasing*, 238 Ga. App. 210, 212 (2) (517 SE2d 571) (1999) (physical precedent only).

appeal to this Court. Vickery withdrew the motion on April 15, 2003, and refiled a "renewed" motion for fees on April 29, 2003. At the evidentiary hearing held on the motion, the Condons argued that the second motion was untimely under OCGA § 9-15-14 (e) because it was filed more than 45 days after summary judgment was granted. The court concluded that the motion was a substantive cause of action for abusive litigation and could be "renewed" under OCGA § 9-2-61 (a). On September 4, 2003, the court entered an order containing extensive findings of fact and conclusions of law, determining that the Condons' suit was brought with malice and without substantial justification. The Condons enumerate five errors with regard to the court's order.

(a) The Condons first contend that the trial court erred in ruling that the motion could be renewed under OCGA § 9-2-61 (a). We agree.

Although the trial court correctly observed that the terms " 'case' and 'action' or 'cause of action' are terms used interchangeably in many court opinions dealing with OCGA § 9-2-61," we hold today that none of those terms includes motions brought pursuant to OCGA § 9-15-14. Therefore, a motion under OCGA § 9-15-14, timely filed within the allowed 45 days but voluntarily dismissed or withdrawn, may not be renewed by virtue of OCGA § 9-2-61 when refiled outside the 45-day period.

The trial court relied on *Hallman v. Emory Univ.*[8] But one judge concurred in the judgment only in *Hallman,* so the decision is not a binding precedent under Court of Appeals Rule 33 (a). Moreover, *Hallman* mistakenly imported into the ancillary motion procedure specified by OCGA § 9-15-14 some of the attributes of an independent lawsuit, including the possibility of renewal. To be sure, the statutory scheme which consolidated and refined the causes of action for abusive litigation, OCGA § 51-7-80 et seq., includes, in OCGA § 51-7-83 (b), a specific reference to "the procedures provided in Code Section 9-15-14." But referring to the motion allowed by OCGA § 9-15-14 does not elevate that motion to a cause of action.

Indeed, fifteen years of experience since the enactment of OCGA § 51-7-80 et seq., and seven years since our decision in *Hallman,* have elucidated significant differences between the abusive litigation cause of action provided by OCGA § 51-7-80 et seq. and the abusive litigation motion prescribed by OCGA § 9-15-14. According to OCGA § 51-7-83 (b): "If the abusive litigation is in a civil proceeding of a court of record and no damages other than costs and expenses of litigation and reasonable attorney's fees are claimed, the procedures provided in Code Section 9-15-14 shall be utilized instead." The Code sections, taken together, clarify that the lawsuit contemplated by OCGA

---

[8] 225 Ga. App. 247 (483 SE2d 362) (1997).

§ 51-7-80 et seq. is appropriate in only two circumstances: when the allegedly abusive civil litigation occurs in a court other than one of record, or when the allegedly abused litigant can prove special damages in addition to the costs and expenses of litigation and attorney fees. In either of those circumstances, the statutory scheme contemplates an independent lawsuit, including a summons and complaint, and, presumably, the right to a jury trial.

An additional distinction between the lawsuit permitted by OCGA § 51-7-80 et seq. and the motion allowed by OCGA § 9-15-14 lies in the timing. OCGA § 51-7-84 (b) requires that the lawsuit be filed within one year after "final termination" of the allegedly abusive proceeding. "Final termination" means a judgment when final after appeal[9] and does not mean, for example, that the lawsuit may be filed after a voluntary dismissal.[10] By contrast, an OCGA § 9-15-14 motion need not await termination of the abusive claims but may be filed "any time during the course of the action. . . ."[11] The motion may not be filed "later than 45 days after the final disposition of the action."[12] Unlike the phrase "final termination" in OCGA § 51-7-84 (b), the phrase "final disposition" in the motion statute does *not* mean after appeal, but means after the conclusion of proceedings in the trial court.[13] These significant differences between the lawsuit allowed by OCGA § 52-7-80 et seq. and the motion permitted by OCGA § 9-15-14 convince us that the analysis in *Hallman* was incorrect and that the renewal statute, OCGA § 9-2-61, does not apply to motions. Therefore, the motion in the case at bar was untimely. The award of attorney fees and costs is reversed.

(b) Our ruling renders the Condons' remaining contentions moot.

*Judgment affirmed in Case Nos. A04A1338 and A04A1340. Judgment reversed in Case No. A04A1339. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 3, 2004.

*Mitchell D. White*, for appellants.

---

[9] See *Wilson v. Hinely*, 259 Ga. App. 615, 616 (578 SE2d 254) (2003).

[10] See *Stocks v. Glover*, 220 Ga. App. 557, 559 (2) (469 SE2d 677) (1996).

[11] OCGA § 9-15-14 (e).

[12] Id.

[13] See *Fairburn Banking Co. v. Gafford*, 263 Ga. 792, 794 (439 SE2d 482) (1994); *Hewitt v. Walker*, 234 Ga. App. 78 (506 SE2d 215) (1998). See also *Little v. Gen. Motors Corp.*, 229 Ga. App. 781 (495 SE2d 572) (1997).

*Smith, Welch & Brittain, E. Gilmore Maxwell, Michael A. O'Quinn, Earnelle P. Winfrey*, for appellees.