## A04A1909. VOJNOVIC et al. v. BRANTS.
(612 SE2d 621)

RUFFIN, Chief Judge.

Sheila Brants sued Gregory Vojnovic and Statler Restaurants Partners, LLC (collectively, "the defendants") for malicious prosecution and intentional infliction of emotional distress.[1] The trial court denied the defendants' motion for summary judgment on these claims, and the case proceeded to a jury trial. The jury awarded Brants $21,750, and the defendants appeal.[2] According to the defendants, the trial court erred in failing to direct a verdict on Brants' malicious prosecution claim.[3] For reasons that follow, we disagree and affirm.

"Where a jury returns a verdict and it has the approval of the trial judge, we must affirm on appeal if there is any evidence to support it."[4] Accordingly, in reviewing a trial court's denial of a motion for directed verdict, we view the evidence in a light most favorable to the jury's verdict.[5] A directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence and all reasonable deductions therefrom demand a certain verdict.[6]

Viewed in this manner, the evidence shows that Brants was hired by Vojnovic to make business recommendations and to update the computer system for his business. Initially, Brants worked as a contractor, earning $50 per hour. But after Vojnovic lost a key employee, Brants was hired full time in October 1997. Part of her duties involved writing checks for the business, including her own paychecks. As part of her employment package, Brants was given a corporate American Express card that she could also use for personal expenses so long as she reimbursed the company.

According to Brants, she was concerned that, by accepting the job, she would give up contract work and that, once the installation of equipment was complete, Vojnovic would fire her. Thus, she asked for a one-year employment commitment. Vojnovic agreed and began paying Brants $1,000 per week.

---

[1] Brants also alleged claims for libel, slander, and breach of contract. The trial court granted the defendants' motion for summary judgment on the libel and slander claims, and it appears that Brants abandoned her claim for breach of contract.

[2] The jury also awarded the defendants approximately $10,000 for a counterclaim.

[3] Vojnovic also alleges that the trial court erred in denying the motion for summary judgment on the malicious prosecution claim. However, this contention is moot given that the case actually proceeded to trial. See *Cherokee County v. Greater Atlanta Homebuilders Assn.*, 255 Ga. App. 764, 769 (2) (566 SE2d 470) (2002).

[4] *Ashmore v. Foster*, 254 Ga. App. 97, 98 (561 SE2d 228) (2002).

[5] See *American Multi-Cinema v. Walker*, 270 Ga. App. 314 (1) (605 SE2d 850) (2004).

[6] See id.

On May 22, 1998, however, Vojnovic fired Brants in order to hire someone who would work for less money. Vojnovic told Brants that he would keep her for two more weeks to train the newcomer and give her an extra $4,000 as severance pay, for a total of $6,000. Brants asked Vojnovic when she could expect the $6,000, and Vojnovic responded "you handle the cash flow. When do you think we'll have the cash? Maybe Memorial Day . . . why don't you take [the money] then." Thus, on May 25, Brants wrote herself checks, which represented her salary and severance pay. Brants also asked about the American Express card, and Vojnovic said that they would "work it out." Brants thus continued to use the card and reimburse the defendants for personal expenses.

Vojnovic subsequently hired an investigator who reported that the money had been stolen. The police then arrested Brants and took her to jail. The criminal case was assigned to Ash Joshi, an assistant district attorney. Ultimately, however, Joshi discovered that Brants was entitled to the $6,000, and he dismissed the case in January 2000.

Brants filed suit against the defendants, alleging that her prosecution was malicious. The defendants moved for summary judgment, arguing inter alia that Brants' claim was barred by judicial estoppel. According to the defendants, the fact that Brants filed for Chapter 7 bankruptcy on September 15, 1999, without listing her tort claim as an asset, barred her from pursuing the claim. The trial court rejected this argument, concluding that Brants' tort claim was not ripe when she filed for bankruptcy.

1. According to the defendants, the trial court erred in failing to find Brants' claim barred by judicial estoppel. "[J]udicial estoppel is an equitable doctrine that prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."[7] The doctrine is commonly used in civil actions to preclude a bankruptcy debtor from pursuing a damages claim he failed to include among his assets in his petition seeking bankruptcy relief.[8]

However, whether a claim is automatically barred depends upon under which bankruptcy chapter the debtor files. As our Supreme Court recently held,

> [u]nlike a bankruptcy proceeding under Chapter 13, there are only limited circumstances in which a Chapter 7 or 11

---

[7] (Punctuation omitted.) *IBF Participating Income Fund v. Dillard-Winecoff*, 275 Ga. 765, 766 (573 SE2d 58) (2002).

[8] *Period Homes, Ltd. v. Wallick*, 275 Ga. 486, 487-488 (1) (569 SE2d 502) (2002).

debtor must amend his schedule of assets to reflect property acquired after commencement of the case. See 11 USC § 541 (a) (7). This is in stark contrast to the amendment requirement that a Chapter 13 debtor is under, 11 USC § 1306 (a), which directs that all property acquired after the commencement of the bankruptcy proceeding be included in an amended schedule of assets. There is no analogous provision for bankruptcies proceeding under Chapters 7 or 11. Accordingly, a debtor under Chapters 7 or 11 is under no *statutory* duty to amend its schedule of assets.[9]

The Supreme Court further concluded that, for bankruptcies under Chapters 7 and 11, the trial court has discretion in determining whether judicial estoppel should bar tort claims.[10]

Here, Brants filed for Chapter 7 bankruptcy on September 15, 1999. However, she did not have a viable malicious prosecution claim until January 2000, when the criminal case against her was ultimately dismissed.[11] Thus, the defendants' argument that Brants' tort claim existed before she filed for bankruptcy is not well-founded. And, as noted above, she had no absolute duty to amend her petition, as suggested by the defendants.[12] Under these circumstances, we cannot say that the trial court abused its discretion in declining to apply judicial estoppel to bar Brants' malicious prosecution claim.[13]

2. The defendants also contend that the trial court erred in failing to direct a verdict on the malicious prosecution claim. To prevail on a claim for malicious prosecution, Brants must prove the following elements: "(1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage."[14] According to the defendants, there was insufficient evidence of malice as probable cause supported Brants' arrest. The defendants further maintain that the decision to prosecute her was made by the police.

---

[9] (Emphasis in original.) Id.

[10] See id. at 488 (2).

[11] "In order to prevail on a claim for malicious prosecution, a plaintiff must demonstrate that: (1) the prosecution was instituted maliciously, (2) without probable cause, and (3) has terminated favorably to the plaintiff." *Condon v. Vickery*, 270 Ga. App. 322, 324 (1) (606 SE2d 336) (2004). Accordingly, until the criminal case ended, Brants had no viable claim.

[12] See *Period Homes*, supra at 487-488 (1).

[13] See id. Notably, the defendants do not set forth how Brants benefitted from taking an inconsistent position. Rather, the defendants rest their argument on a mistaken belief that Brants was required to amend her bankruptcy petition. Cf. id. at 488-489 (2).

[14] *Gibbs v. Loomis, Fargo & Co.*, 259 Ga. App. 170, 172-173 (576 SE2d 589) (2003).

(a) We first consider whether there was any evidence that the defendants acted with malice. " 'Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured.' "[15] Moreover, malice may be inferred in the absence of probable cause.[16] " 'Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused.' "[17]

At trial, Brants presented evidence that Vojnovic authorized her to write herself checks representing her last two weeks of salary and her severance pay, then reported the money stolen. She also presented evidence suggesting that Vojnovic manufactured and post-dated documents to erroneously show that she wrote the checks in violation of company policy. Under these circumstances, the jury was authorized to find that Vojnovic acted maliciously and without probable cause.[18]

(b) We also discount the defendants' argument that they cannot be held liable since the decision to arrest and prosecute Brants was made by the police. The evidence shows that Vojnovic hired investigators to inquire into the alleged theft and that the investigators contacted the police. As this Court recently reiterated,

> [t]he law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for malicious prosecution; in the latter case there is not. It is clear, though, that initiation of the criminal action need not be expressly directed by the party to be held liable. A distinction must be taken between actually instigating or procuring the institution of criminal proceedings and merely laying information before a law

---

[15] *Ashmore*, supra at 101 (1) (c).

[16] See id.

[17] See id. at (1) (b).

[18] See id.; *Wolf Camera v. Royter*, 253 Ga. App. 254, 255-257 (1) (558 SE2d 797) (2002). On appeal, the defendants argue that Brants' use of the corporate American Express card for personal use establishes a separate, legitimate basis for prosecution. As with the checks, however, Brants presented evidence that she was permitted to use the credit card for personal expenses and that she always repaid the company. Brants also presented evidence that Vojnovic manufactured and post-dated a document to fraudulently show that she was not authorized to use the credit card in this manner. Given this evidence, we find the defendants' argument unpersuasive.

enforcement official without in any way attempting to influence his judgment. A person may be liable where he gave information to the investigating officer which he knew to be false and so unduly influenced the authorities.[19]

Given that Vojnovic's employee contacted the police and apparently provided the documents that Brants alleged had been fabricated, the defendants cannot insulate themselves from liability by simply asserting that the police acted independently in prosecuting Brants.[20]

*Judgment affirmed. Adams and Bernes, JJ., concur.*

DECIDED MARCH 25, 2005.

*Hall, Booth, Smith & Slover, Terrell W. Benton III, Holly M. Miller*, for appellants.
*Jack J. Menendez*, for appellee.

