## A95A2089. WILLIS et al. v. BRASSELL.
(469 SE2d 733)

BEASLEY, Chief Judge.

Defendants Willis and Coventry Holding Group, Inc. appeal a civil jury verdict for malicious prosecution (OCGA § 51-7-40) in favor of Brassell, alleging that the court erred in denying defendants' motions for new trial and judgment notwithstanding the verdict (OCGA § 9-11-50 (b)) and in allowing the issue of punitive damages to go to the jury (OCGA § 51-12-5.1).

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. [Cits.]" *Taylor v. Ga. Power Co.*, 136 Ga. App. 412, 413 (1) (221 SE2d 222) (1975). A trial court may grant a motion for j.n.o.v. only where there is no conflict in the evidence as to any material issue and the evidence, with all reasonable deductions, demands a particular verdict. See *Allen v. Wometco Cable TV &c.*, 198 Ga. App. 103, 104 (400 SE2d 362) (1990). The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. *Williamscraft Dev. v. Vulcan Materials Co.*, 196 Ga. App. 703, 704 (2) (397 SE2d 122) (1990). As long as there is some evidence to support the verdict, the denial of defendant's motions for new trial and j.n.o.v. will not be disturbed. *Bldg. Materials Wholesale v. Reeves*, 209 Ga. App. 361, 364 (2) (433 SE2d 346) (1993); *Wehunt v. Wren's Cross of Atlanta &c. Assn.*, 175 Ga. App. 70, 72 (1) (332 SE2d 368) (1985).

Viewed in this light, the evidence supports the following findings of fact. Roberta Brassell was a nurse's assistant responsible for the care of several elderly residents at Coventry Place, a retirement community. She was employed by Trimark Health Services, a contractor which provided special nursing services to elderly clients in the community. Coventry Place is owned and operated by Coventry Holding Group; its managing director is Daniel Willis.

Coventry Place, through Willis, was in the process of starting a special care nursing service which would directly compete with Trimark and was attempting to eliminate Trimark as a competitor for nursing services, so that Coventry would become the sole provider to Coventry Place residents. Tension existed between Trimark and Coventry Place personnel, harassment of the Trimark employees assigned to work at Coventry Place occurred, and "getting rid of" Trimark was discussed at staff meetings. Trimark employees were required to sign in and out, ring a doorbell when entering the facility, and be escorted by a Coventry Place employee in the common areas.

Louis Flemister was a nearly blind 85-year-old resident. Renatta Diebold, Willis's assistant, testified that Flemister could not read his mail or insurance forms or fill out his checks. He could not see elevator floor buttons but rather had to feel and count them to determine which button to press. He was able to sign his name only if someone held a finger where he was to sign or placed an "X" by the signature line.

When Diebold arrived at work on August 9, 1991, she found Flemister waiting outside Willis's office. He reported that he had entered his apartment and found a black woman wearing green clothes in his room. When he accused her of taking his sleeping pills, she left. Diebold instructed Flemister to wait in the office until Willis arrived. Upon Willis's arrival, Diebold related Flemister's report. Willis took Flemister aside, conversed privately, and called the police.

Before the police arrived, Diebold told Willis that Mizell, another black female Trimark employee, usually wore green clothing and that she worked on Flemister's floor. In fact, on the morning of Brassell's arrest, Flemister had accused Mizell of stealing his sleeping pills when he saw her on the third floor. No one, including Willis, talked with or questioned Mizell before calling the police, even though she had signed in to work that morning. Willis sent an employee to the apartment of one resident in Brassell's care, ostensibly to inquire as to the resident's health but in fact to locate Brassell to determine the color of her clothing. Brassell has red hair and was wearing pink and white.

When the police arrived, Willis greeted them and spoke directly to Officer Berry. Berry testified that Willis reported that a black female with pink and white clothing and red hair was in Flemister's room stealing his medication. Willis repeatedly stated in front of the police officer that Brassell worked on the third floor where the alleged criminal trespass occurred and suggested that Brassell may have changed from green to pink clothes. Willis did not tell the officer that Flemister had seen a black female wearing green clothing, that he could not identify her by name, that he had terrible eyesight, that there was a black female who worked down the hall from Flemister who usually wore green and was in fact then wearing green. The officer further testified that had Willis made these facts known, he would have expanded his investigation by re-interviewing witnesses, interviewing additional witnesses, confronting all suspects, and calling additional investigators to the scene.

Willis was described as "pleased" that Brassell had been arrested and commented, "Well, we are going to get rid of Trimark now." Subsequently, Willis barred Trimark from doing business at Coventry Place and cited Brassell's arrest as a reason.

Brassell was jailed for 13 hours. Flemister was brought to the police department and was interviewed by a detective. A magistrate

issued a warrant for Brassell's arrest. The magistrate testified that he issued the warrant after he satisfied himself that Flemister could identify the perpetrator as Roberta Brassell. He further testified that although Brassell was taken originally to the police station under a charge of burglary (OCGA § 16-7-1), the warrant was issued for criminal trespass (OCGA § 16-7-21 (b)).

By stipulation, the transcript of Flemister's examination at Brassell's preliminary hearing was read into evidence. He testified that he did not know Brassell's name on the day she was arrested, that he had bad eyesight, that he was not wearing his hearing aid when he went to his room on the morning of the incident, and that the woman he saw in his room was wearing a tan and brown dress. He further testified that Willis called the police but he did not remember talking to them. He was unable to identify Brassell as the person he saw in his room, although he indicated she was about that person's height. The court dismissed the case, and Brassell sued defendants for malicious prosecution.

"A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." OCGA § 51-7-40. Although an aggrieved party has an especially heavy burden in such cases since his interest is weighed against the public's interest in encouraging citizens to report violations of law, *K Mart Corp. v. Griffin*, 189 Ga. App. 225, 226 (375 SE2d 257) (1988), a plaintiff may prevail if each of the following elements is pled and proved: (1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff. OCGA § 51-7-40; *Medoc Corp. v. Keel*, 166 Ga. App. 615 (1) (305 SE2d 134) (1983); *J. C. Penney Co. v. Miller*, 182 Ga. App. 64, 66 (2) (354 SE2d 682) (1987). The question is whether each element is supported by evidence.

1. (a) At trial, defendants maintained that Willis merely told the investigating officer what he believed to be the truth and that the officer made his own independent investigation and decision to arrest Brassell, whereas Brassell contended that Willis instigated the prosecution for criminal trespass by withholding and misstating key information.

"The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for . . . malicious prosecution [cit.]; in the latter case there is not. [Cit.] It is clear, though, that initiation of the criminal action need not be expressly

directed by the party to be held liable. [Cit.] . . . [Cit.] 'A distinction must be taken between actually instigating or procuring the institution of criminal proceedings and merely laying information before a law enforcement official without in any way attempting to influence his judgment.'" *Ginn v. Citizens & Southern Nat. Bank*, 145 Ga. App. 175, 178 (3) (243 SE2d 528) (1978). A person may be liable where "he gave information [to the investigating officer] which he knew to be false and so unduly influenced the authorities." Prosser, Law of Torts (4th ed. 1971), p. 837, § 119, quoted in *Melton v. La-Calamito*, 158 Ga. App. 820, 822 (2) (282 SE2d 393) (1981).

Brassell presented evidence that tended to prove that Willis relayed to the police information which he knew to be false, misleading or materially incomplete, from which the jury reasonably could conclude that Willis was attempting to influence the police to prosecute: 1) Willis failed to relay to the police Flemister's actual description of the suspect — a black woman wearing green —and that there was a woman who in fact matched Flemister's description working on the same floor where the crime allegedly occurred; 2) learning that Brassell was wearing pink and white, Willis falsely stated to the police that Flemister had reported seeing a black woman so attired in his room. The officer's testimony that he would have expanded the investigation had he known this evidences its significance. The defendants attempted to contradict and impeach Brassell's evidence through testimony that Coventry Place had been apprised that residents had been missing medicine over a period of some time, that the daughter of one resident had complained Brassell entered her parents' room without knocking, and that a resident had reported finding Brassell in her room in the middle of the night. The jury was entitled to weigh the sufficiency and credibility of the evidence, to accept Brassell's factual contentions over defendants', and to determine that Willis had instigated Brassell's prosecution and arrest. *Fuller v. Jennings*, 213 Ga. App. 773, 777 (1) (445 SE2d 796) (1994).

(b) The jury could have inferred from the evidence that it was not reasonable for Willis to call the police without a more thorough investigation or verification and that his failure to inquire instigated the prosecution and arrest of Brassell. For example, neither Brassell nor the nurse's assistant who regularly wore green was questioned prior to the police being called. "[W]here a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and [her] opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification." *Melton*, supra at 824 (2) (b), quoting Prosser, supra at 842. See

also *Bi-Lo v. McConnell*, 199 Ga. App. 154, 155-156 (2) (404 SE2d 327) (1991); *Atlantic Zayre v. Meeks*, 194 Ga. App. 267, 269 (1) (390 SE2d 398) (1990).

(c) Defendants contend that because Brassell was prosecuted for criminal trespass when they charged her with burglary, they cannot be regarded as having instigated the criminal proceeding. As authority for this argument, they rely on language from Prosser, Law of Torts, supra at p. 837, § 119, which was quoted with approval in *Melton*, supra at 823 (2) (a): " 'If the defendant . . . merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, *or prosecutes for an offense other than the one charged by the defendant*, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable.' " (Emphasis supplied.) Willis charged Brassell with entering into Flemister's room without authority and stealing his sleeping pills. The investigating officer believed these factors constituted burglary. The magistrate determined that the allegations constituted criminal trespass. The act Willis charged Brassell with was precisely the offense for which she was ultimately prosecuted. It is the nature of the prosecution, not the express legal charge, which is the crucial ingredient.

2. The second and third elements of malicious prosection were proved in that the prosecution proceeded under a valid warrant issued by the magistrate and was dismissed at the preliminary hearing.

3. As to malice, "[it] consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." OCGA § 51-7-2. Malice may be inferred if "defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff." *Bowen v. Waters*, 170 Ga. App. 65, 67 (2) (316 SE2d 497) (1984).

Brassell produced direct evidence of malice which included testimony that: (1) on several occasions before Brassell's arrest, Willis stated he was going to get rid of Trimark, Brassell's employer and the defendants' competitor; (2) he was pleased after Brassell's arrest; (3) after Brassell's arrest, he stated he would now be able to "get rid" of Trimark; and (4) Willis thereafter barred Trimark from Coventry Place and cited Brassell's arrest as a reason. A jury could determine that this evidence demonstrated an ulterior motive for Brassell's prosecution and to conclude that Willis acted with malice. In addition, it supported the reasonable inference that Willis had no ground for his actions but his desire to injure Brassell's employer, Trimark, and cal-

lously incidentally, Brassell.

4. In a case involving malicious prosecution, "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." OCGA § 51-7-43. If probable cause existed at the time defendant set the criminal proceeding in motion, plaintiff cannot recover for malicious prosecution even if defendant had an improper motive. *Smith v. Ragan*, 140 Ga. App. 33, 34 (2) (230 SE2d 89) (1976).

Defendants maintain that the determination of probable cause was a legal question for the court to resolve. OCGA § 51-7-43 provides, in addition to what is quoted above: "Lack of probable cause shall be a question for the jury, under the direction of the court." Thus, "[u]nless the facts regarding probable cause are undisputed, it is a question for the jury." *Fuller*, supra at 775 (1). The facts were decidedly in dispute, leaving to the jury the task of determining if the circumstances were such so as to create an honest and reasonable belief in Willis's mind that there was probable cause for the prosecution. *Melton*, supra at 823-824.

Probable cause can be found only after reasonable and proper inquiry. *Sanfrantello v. Sears, Roebuck & Co.*, 118 Ga. App. 205, 206 (163 SE2d 256) (1968). It cannot exist if defendant knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts. The defendant's belief then could not possibly be "honest" or "reasonable." See *Branson v. Donaldson*, 206 Ga. App. 723, 724 (1) (a) (426 SE2d 218) (1992); *Auld v. Colonial Stores*, 76 Ga. App. 329, 335 (2) (45 SE2d 827) (1947). As discussed in Division 1 (a) and (b), Brassell presented evidence upon which the jury could have determined that Willis failed to make reasonable inquiry, failed to disclose material information, and falsified material information. This was a sufficient basis for finding not only that Willis instigated the prosecution but also that there was no probable cause to arrest Brassell.

Defendants cite *Tench v. Turner*, 201 Ga. App. 156 (410 SE2d 357) (1991), and *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177 (449 SE2d 895) (1994), for the proposition that if defendant merely states the facts as he understands them and the police officer independently decides to investigate and arrest, defendant cannot be liable for malicious prosecution. These cases are distinguishable from Brassell's case in that there was no evidence that defendant distorted or withheld information. Furthermore, in *McLeod*, the police detective executed an affidavit saying "the decision to charge (plaintiff) was made by [the detective] acting independently in (his) profession as an investigator based upon (his) experience combined with the facts as revealed

to (him) by the witnesses and the circumstantial evidence." Id. at 178. No such affidavit or statement was issued in this case.

Defendants contend that a magistrate's finding is prima facie evidence of probable cause, citing *Monroe v. Sigler*, 256 Ga. 759, 760 (3) (353 SE2d 23) (1987). The actual holding of *Monroe* is that the magistrate binding over the accused on a criminal warrant or the issuance of an indictment is prima facie, but not conclusive, evidence of probable cause for the prosecution. The magistrate did not bind Brassell over but rather dismissed the case, as defendants stipulated at trial. *Monroe* is inapplicable.[1]

5. Finally, there was sufficient evidence from which the jury could find that Brassell had suffered damages. Each element of malicious prosecution having been proved, the trial court properly denied defendants' motions for j.n.o.v. and for new trial.

The jury specially found that punitive damages should be awarded, and as part of their punitive damages verdict, found that defendants had a specific intent to harm Brassell. As earlier stated, there was evidence to warrant a finding of malice. Under OCGA § 51-12-5.1, punitive damages may be awarded to penalize, punish, or deter a defendant in such actions where a plaintiff proves by clear and convincing evidence that the defendant's actions showed "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care that would raise the presumption of conscious indifference to the consequences."

Moreover, "[r]ecovery in actions for malicious prosecution shall not be confined to the actual damage sustained by the accused but shall be regulated by the circumstances of each case." OCGA § 51-7-47. The measure of damages in a malicious prosecution case is " 'the enlightened conscience of impartial jurors. (Cits.)' " *Branson*, supra at 726 (4). "Punitive damages are allowed where a defendant's act was influenced by malicious motives and was without probable cause." *Atlantic Zayre*, supra at 270 (2). By holding the defendants liable for malicious prosecution, the jury necessarily found that defendants acted with malice. In addition to an inference of malice, the evidence supported a finding that defendants acted with a "conscious indifference to consequences." *Felton v. Mercer*, 149 Ga. App. 358, 361 (3) (254 SE2d 398) (1979).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

---

[1] Defendants contend that Brassell waived her preliminary hearing and that such waiver is prima facie evidence of probable cause. This contention is apparently based upon the testimony of the magistrate that Brassell must have waived her preliminary hearing because the word "waived" was handwritten on the front of her arrest warrant. This was apparently the result of some confusion, since a preliminary hearing was in fact held and portions of testimony from that hearing were read into the record of this case. Furthermore, Brassell never signed any document waiving her right to a preliminary hearing.

DECIDED FEBRUARY 27, 1996.

*Zachary & Segraves, J. Ed Segraves*, for appellants.
*Cashin, Morton & Mullins, James M. Sherman, O'Neal, Brown & Sizemore, John C. Clark*, for appellee.