**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0100. LAGROON et al. v. LAWSON et al.

McFADDEN, Judge.

This appeal concerns a grant of summary judgment to three law enforcement officers – Lincoln County Sheriff Gerald S. Lawson and Lincoln County Deputies James K. Foskey and Jack Hancock – in an action brought by Robert Jay Lagroon and Kelli Sue Barnett for false imprisonment, false arrest, and malicious prosecution. Lagroon and Barnett were charged in a special presentment with contributing to the delinquency of minors by being present at a party where minors were consuming alcohol, which was held at the home of another person, Kathy Rhodes. They argue that the defendants were motivated to arrest and prosecute them, without probable cause to do so, out of friendship with Barnett's estranged husband and Kathy Rhodes'

estranged ex-husband. The state eventually obtained an order nolle prosequi dismissing the charges.

Because we find that malicious prosecution is the exclusive remedy available to Lagroon and Barnett, we affirm the grant of summary judgment to the defendants on the claims for false imprisonment and false arrest. We reverse the grant of summary judgment on the malicious prosecution claims, however, because there are genuine issues of material fact as to whether the defendants were entitled to official immunity, whether they honestly and reasonably believed there was probable cause, and whether they acted with malice.

1. *Facts.*

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the non-movant." *Stolte v. Hammack*, 311 Ga. App. 710 (716 SE2d 796) (2011) (citation and punctuation omitted). Consequently, we view the evidence in the light most favorable to Lagroon and Barnett, even though the defendants have provided evidence depicting a dramatically different version of the events at issue, and even though a non-party

2

witness, who had given affidavit testimony favorable to Lagroon and Barnett, flatly contradicted that testimony in a subsequent affidavit. See *Thompson v. Ezor*, 272 Ga. 849, 852-853 (2) (536 SE2d 749) (2000) (self-contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) "applies only to the testimony of parties to a case, and not to the testimony of witnesses who are not parties") (citations omitted).

So viewed, the evidence shows that Appellant Lagroon was a dentist in South Carolina and Appellant Barnett was his office employee and babysitter for his two young children. On January 6, 2007, the two embarked on a driving trip to Savannah where Lagroon would attend a professional meeting and Barnett would babysit the children. They were towing a camper. When the lights on the camper began to malfunction, they stopped at property adjacent to the house of Kathy Rhodes, an acquaintance of Barnett. Lagroon could not repair the lights, and he and the children prepared to stay the night in the camper while Barnett waited to be picked up by a relative.

Unbeknownst to Lagroon and Barnett, Kathy Rhodes' two teenaged sons had arranged to have a party at her house to celebrate the older son's 18th birthday. Teenagers began arriving on the property, bringing coolers, food and drinks. Wade

3

Rhodes, who was Kathy Rhodes' ex-husband and the father of the two boys, knew about the party and was concerned that the teenagers would be drinking alcohol. He and a friend watched the party through binoculars, became convinced that the party involved underage drinking, and reported the party to Sheriff Lawson.

Sheriff Lawson arrived at Kathy Rhodes' house with two deputies, one of whom was Deputy Foskey. They saw cars parked everywhere and a large number of underage people outside of the house near a bonfire. Many of the partygoers were drinking alcohol. On the deck of the house, teenagers were getting beer from coolers, and there was alcohol available inside the house, as well. As the law enforcement officers approached, many partygoers scattered, but the officers corralled some of them into the house.

Deputy Foskey interviewed partygoers to determine who had provided the alcohol. Most of them said they did not know who had provided the alcohol, but some gave statements indicating that Lagroon and Barnett had been at the party, and four gave statements identifying "the dentist" as the alcohol source. Two out of those four witnesses, however, subsequently testified that they originally told law enforcement officers they did not know who provided the alcohol and that they gave the statements implicating Lagroon only after being coerced to do so. In one case, at Sheriff

Lawson's direction, Deputy Foskey tore up the witness's original statement and told the crying teenager to sign a new statement implicating Lagroon or else the deputy would arrest him and take him to the Juvenile Detention Center. In another instance, when a teenaged witness refused to give a statement implicating Lagroon, the teenager's father began "physically abusing" him and told him that he would "throw [the teenager] out of the house if [he] did not write a statement for the Sheriff stating that Dr. Lagroon had brought the beer to the party." This occurred in front of Sheriff Lawson. According to another teenager, the law enforcement officers "were telling us basically what to write down, at the beginning, that night. . . . They were sitting there telling us that we needed to write this and we need to write that."

After receiving the statements from the teenagers, Sheriff Lawson went to the camper, accompanied by his chief investigator, Deputy Hancock, whom he had called to the scene, as well as Wade Rhodes and Rhodes's friend. Deputy Hancock knocked on the camper door and Lagroon answered. Sheriff Lawson asked for his identification and told him that he had eyewitnesses that Lagroon was serving drinks to kids out of the camper, a representation that was not supported by any of the witness statements. When Lagroon informed Sheriff Lawson that his children and Barnett were inside the camper, Deputy Hancock yelled: "Call DFACS!" Deputy

5

Hancock took Barnett out of the camper and told her that they had eyewitnesses that she was either selling or serving alcohol to minors. As Barnett began to explain their presence on the adjacent property, Sheriff Lawson approached and said "arrest all the adults because they are going to lie for each other." He told Deputy Foskey that the witness statements supported the arrest of Lagroon and Barnett, and he instructed Deputy Hancock to interview them at the Sheriff's office. Deputy Hancock walked Barnett to Kathy Rhodes's house and told her to get into a law enforcement vehicle.

Barnett was driven to the Sheriff's office and placed in a holding cell until the following morning, when Deputy Hancock interviewed her. He did not question her about what happened at the party; instead, he questioned her primarily about her estranged husband, whom she was divorcing. He told Barnett that he was the officer who had to "kick [her] husband out of the house" in response to a temporary restraining order that Barnett had obtained the month before, that he felt bad about kicking her husband out, that her husband was a "nice guy," and that he had her husband's cell phone number and would call him to "come up there" to the Sheriff's office. He also told Barnett that he would be testifying against her in her divorce action. Barnett provided Hancock with a written statement explaining why she had

been in the camper on the property adjacent to the party, and she was returned to her cell.

Lagroon was taken separately to the Sheriff's office where, after waiting several hours, he was interviewed by Deputy Hancock. Deputy Hancock questioned him about an alcohol purchase he had made before leaving on his trip to Savannah. Deputy Hancock then asked Lagroon to sign a paper that set forth his *Miranda* rights, and when Lagroon asked whether he was under arrest replied, "I don't know." Deputy Hancock finally told Lagroon he was under arrest and demanded that he make a written statement. Lagroon refused and was placed in a cell.

Deputy Hancock also interviewed Kathy Rhodes at the Sheriff's office. In that interview, she repeatedly told Deputy Hancock that neither Lagroon nor Barnett provided alcohol for the party. She gave Deputy Hancock a written statement to that effect.

After the interviews, Deputy Hancock told Deputy Foskey that there was probable cause to arrest Lagroon and Barnett, and based on the earlier witness statements and Deputy Hancock's interviews, Deputy Foskey obtained arrest warrants for Lagroon and Barnett from a magistrate judge for contributing to the delinquency of minors. Lagroon and Barnett were released on bond, and they appeared in court

and pled not guilty to the charges. Their arrests negatively affected Lagroon's dental practice, Barnett's ability to find employment, and Barnett's ongoing divorce proceedings.

The Sheriff's office sent the case file to the District Attorney's office in February 2007. Later that spring, Kathy Rhodes gave Deputy Hancock a further written statement that neither Lagroon nor Barnett had provided alcohol at the party. In July 2007, she sought a copy of that statement, and Deputy Hancock told her that he had torn it up. He asked her to write another statement and she did, again stating that neither Lagroon nor Barnett provided alcohol at the party. Deputy Hancock did not forward Rhodes's July 2007 statement to the District Attorney's office at that time.

Sheriff Lawson requested that the District Attorney's office seek indictments against Lagroon and Barnett on multiple counts. In January 2008, Deputy Foskey testified before a grand jury about the case against Lagroon and Barnett, and the grand jury returned a special presentment charging Lagroon and Barnett with seven counts each of contributing to the delinquency of a minor.

In April 2008, Deputy Hancock sent the District Attorney's office the statement he had obtained from Kathy Rhodes nine months before. The District Attorney

8

testified in his deposition that he thought the statement "completed exonerated" Lagroon and Barnett. He testified that he "really became angry" after receiving the statement from Hancock, and he testified, "it's my career that this man [Hancock] was messing with, and I'm still upset about it." The District Attorney also testified that if he had known of the statement's existence earlier he would have approached the case differently before the grand jury and might not have taken the case to the grand jury at all. On December 15, 2008, the District Attorney obtained a order of nolle prosequi dismissing the charges against Lagroon and Barnett.

2. *Official immunity.*

As a threshold issue, we address the defendants' argument that, as a matter of law, they are entitled to official immunity. See *Marshall v. Browning*, 310 Ga. App. 64, 67 & n. 3 (712 SE2d 71) (2011). The doctrine of official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009) (citation and punctuation omitted). See also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

Because the defendants' actions challenged in this case are discretionary, they are immune from suit unless they acted with wilfulness or actual malice. See

*Marshall*, 310 Ga. App. at 67 (police detective was acting within discretionary authority in investigating case, obtaining search and arrest warrants, and executing warrants); *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002) (decision to arrest is discretionary act). "Actual malice requires a showing that the actor had a deliberate intention to do wrong, and . . . wilful conduct is based on an actual intention to do harm or inflict injury." *Griswold v. Collins*, 318 Ga. App. 556, 558 (2) (a) (734 SE2d 425) (2012) (citations and punctuation omitted). A factfinder may infer from evidence that a defendant acted with actual malice. *City of Atlanta v. Shavers*, 326 Ga. App. 95, 98 (2) (b) (756 SE2d 204) (2014). As explained below, a jury could infer from the evidence in this case that all three defendants acted with actual malice.

(a) *Sheriff Lawson and Deputy Foskey*.

As to Sheriff Lawson and Deputy Foskey, there is evidence that they were told at the scene that Lagroon and Barnett had no involvement with the alcohol available at the party. Nevertheless, there is evidence that they used or condoned threats to pressure teenaged eyewitnesses into giving statements to the contrary, and that they dictated the contents of some of those the statements. Furthermore, there is evidence that Sheriff Lawson and Deputy Foskey used these improperly-procured statements

10

as the basis for arresting and prosecuting Lagroon and Barnett despite knowing of the statements' falsity, inaccuracy or unreliability.

From this evidence, a jury reasonably could infer that Sheriff Lawson and Deputy Foskey arrested Lagroon and Barnett and took steps to secure grand jury charges against them despite knowing that they had not committed any offenses, "thereby establishing that the officer[s] deliberately intended to do a wrongful act." *City of Atlanta*, 326 Ga. App. at 98 (2) (b) (citation and punctuation omitted). Such evidence raises a fact question about whether Sheriff Lawson and Deputy Foskey acted with actual malice. See *Bateast v. DeKalb County*, 258 Ga. App. 131, 132 (572 SE2d 756) (2002); see also *Greenway v. Northside Hosp.*, __ Ga. App. __, __ (__ SE2d __) (Case No. A12A0705, decided May 27, 2014) (where deputy falsely stated to hospital patient that he worked for Humane Society, failed to correct statements made by medical personnel in his presence that patient's dogs would go to Humane Society and later could be reclaimed, refused to read release form – allowing for euthanization of dogs – to patient after learning patient could not read form without glasses, and used his position to coerce patient to "sign the damn form" at a time when patient was on medication and "out of it," fact question existed as to whether deputy acted with actual malice); *Jackson v. Payne*, __ Ga. App. __, __ (1) (__ SE2d

11

__) (Case No. A13A1921, decided March 26, 2014) (where there was evidence that deputies "arrested [the plaintiff] during the execution of [a] fi. fa and detained him without authority, thereby deliberately intending to do a wrongful act," jury question existed as to actual malice). Cf. *Marshall*, 310 Ga. App. at 68 (in finding that officer was entitled to official immunity against malicious prosecution claim, noting that officer was not "accused of *manufacturing evidence or knowingly presenting perjured testimony*") (citation omitted; emphasis supplied).

(b) *Deputy Hancock.*

There is evidence that Deputy Hancock used his interview with Barnett to question her about her estranged husband, rather than the facts of the case, and then misrepresented to Deputy Foskey that the interview supported the decision to seek an arrest warrant. There is evidence that Deputy Hancock threatened to bring Barnett's husband to the jail despite the protective order against him, and evidence that he bragged to Barnett about testifying against her in her upcoming divorce trial. And there is evidence that for nine months Deputy Hancock concealed from the District Attorney exculpatory evidence favoring Barnett and Lagroon, failing to provide this information until after the grand jury proceedings. A jury could infer from this

12

evidence that Deputy Hancock acted with actual malice. See *Greenway*, __ Ga. App. at __.

3. *Applicable cause of action.*

Lagroon and Barnett brought claims for false imprisonment, false arrest, and malicious prosecution. These are three different, related torts. Because Lagroon and Barnett were arrested pursuant to a warrant and the action was carried on to a prosecution, the applicable cause of action is malicious prosecution.

Although the distinctions among the torts of false imprisonment, false arrest, and malicious prosecution are not always clear in our case law,

> (1) false imprisonment . . . is "unlawful" detention without judicial process, or without the involvement of a judge at any point (OCGA § 51-7-20); (2) false or malicious arrest . . . is detention "under process of law" (OCGA § 51-7-1); and (3) malicious prosecution . . . is detention with judicial process followed by prosecution (OCGA § 51-7-40).

*Ferrell v. Mikula*, 295 Ga. App. 326, 329 (2) (672 SE2d 7) (2008). The "key distinction" between false imprisonment and false or malicious arrest is "whether the person was detained using a warrant or not." Id. And where there has been an arrest pursuant to warrant,

13

the remedy of the accused depends on whether or not he is actually prosecuted under the warrant. If after the arrest the warrant is dismissed or not followed up, the remedy is for malicious arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for malicious arrest will not lie.

*Garner v. Heilig-Meyers Furniture Co.*, 240 Ga. App. 780, 781-782 (1) (525 SE2d 145) (1999) (citation omitted).

The undisputed evidence in this case showed that law enforcement officials obtained warrants for the arrest of Lagroon and Barnett and that the state subsequently charged them with criminal offenses pursuant to a special presentment by the grand jury. See generally OCGA § 17-7-51 ("All special presentments by the grand jury charging defendants with violations of the penal laws shall be treated as indictments."). Consequently, the applicable cause of action in this case is malicious prosecution. *McCord v. Jones*, 168 Ga. App. 891, 892 (311 SE2d 209) (1983) (case raised claim of malicious arrest rather than malicious prosecution "since the district attorney sought no indictment and no prosecution has been carried on"). And the trial court did not err in granting summary judgment to the defendants on the claims for false imprisonment and false arrest.

4. *Malicious prosecution.*

"A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." OCGA § 51-7-40. A plaintiff asserting malicious prosecution must show: "(1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff." *Willis v. Brassell*, 220 Ga. App. 348, 350 (469 SE2d 733) (1996) (citations omitted). Lagroon and Barnett have produced enough evidence as to each of those elements to reach a jury.

About most of those elements, little more needs to be said. As discussed in Division 3, supra, Lagroon and Barnett have shown that they were prosecuted for criminal offenses, and there is evidence by which a jury could find that the three defendants instigated the prosecution. The evidence also established that Lagroon and Barnett were prosecuted under warrants obtained from the magistrate court and that the prosecution ultimately terminated in their favor by way of nolle prosequi. See *State v. Davis*, 196 Ga. App. 785, 786 (397 SE2d 58) (1990) (entry of nolle prosequi brought prosecution to an end). Finally, the record also contains evidence of some damage to Lagroon and Barnett, including reputational damage and Lagroon's hiring

15

of an attorney to defend him against the criminal prosecution. See *Medoc Corp. v. Keel*, 166 Ga. App. 615, 616 (1) (305 SE2d 134) (1983) (attorney fees paid to defend against criminal action are recoverable damages in malicious prosecution action).

(a) *Want of probable cause.*

"Want of probable cause is the gravamen of an action for malicious prosecution[.]" *Condon v. Vickery*, 270 Ga. App. 322, 324 (1) (606 SE2d 336) (2004) (citation and punctuation omitted). "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court." OCGA § 51-7-43. A judge, however, "may determine the issue when the material facts are undisputed." *Adams v. Carlisle*, 278 Ga. App. 777, 782 (1) (630 SE2d 529) (2006) (citations omitted). And while a grand jury's return of charges is prima facie evidence of probable cause, it is not conclusive and can be rebutted by direct or circumstantial evidence. See *Rowe v. CSX Transp.*, 219 Ga. App. 380, 381 (465 SE2d 476) (1995); *Auld v. Colonial Stores*, 76 Ga. App. 329, 336 (2) (45 SE2d 827) (1947).

"Probable cause does not depend on the actual state of the case in point of fact, but on the honest and reasonable belief of the party commencing the prosecution."

16

*Harmon v. Redding*, 135 Ga. App. 124, 125 (1) (218 SE2d 32) (1975) (citation omitted). The defendants testified that they believed that there was probable cause that Lagroon and Barnett committed the offense of contributing to the delinquency of a minor based on evidence that they were present at a party where underage drinking occurred and evidence that Lagroon had supplied alcohol for the party. The evidence, however, raises a question of fact as to whether they had a basis for their professed belief.

First, the presence of Lagroon and Barnett at the party, without more, does not support a reasonable belief that probable cause existed, because such behavior is not a crime. Although a minor's consumption of alcohol fell within the definition of a delinquent act under former OCGA § 15-11-2 (6) (A) (2013),[1] an unrelated adult does not commit the crime of contributing to that delinquent act merely by being present when the underage consumption occurs. See *Boyd v. State*, 314 Ga. App. 883, 885 (726 SE2d 135) (2012) (mere presence, without evidence supporting inference of active participation in offense, generally is insufficient to show criminal conduct). Instead, "[a] person commits the offense of contributing to the delinquency . . . of a

---

[1] A similar definition of "delinquent act" can be found in Georgia's new Juvenile Code at OCGA § 15-11-2 (19).

17

minor when such person . . . [k]nowingly and willing encourages, causes, abets, connives, or aids a minor in committing a delinquent act." Former OCGA § 16-12-1 (b) (1) (2013).[2]

In cases where we have found evidence to support the conviction of an adult for this offense for being in the presence of an unrelated minor who was consuming alcohol, there were circumstances beyond the adult's mere presence when the alcohol was consumed. For example, in *Boyd*, supra, there was evidence that the defendant adult and the minor went together to a park where the minor proceeded to drink beer. We found that this evidence supported an inference that the two were at the park together for that specific purpose and, consequently, a jury could find that the adult had actively participated in "conniving" in the minor's possession and consumption of alcohol. *Boyd*, 314 Ga. App. at 885. And in *Beckom v. State*, 286 Ga. App. 38 (648 SE2d 656) (2007), the defendant adult knowingly allowed a party with underage drinking to occur in her home. Id. at 40 (1). In contrast, the evidence of Lagroon's and Barnett's presence merely shows that they were at the house of another at the same time as delinquent minors.

---

[2] Georgia's new Juvenile Code has retained this language. See OCGA § 16-12-1 (b) (1).

Aside from the statements linking Lagroon to the alcohol, addressed below, the defendants had no additional evidence that Lagroon or Barnett knowingly or willingly acted to encourage, cause, abet, connive, or aid any of the minors in drinking alcohol. None of the witness statements, upon which the defendants claim to have relied in finding probable cause, indicated that Barnett brought alcohol to the party or served or encouraged anyone there to use alcohol. And a question of fact exists as to whether the defendants formed an honest or reasonable belief that there was probable cause from the statements linking Lagroon to the alcohol.

A defendant's belief is not "honest" or "reasonable" where there is evidence that the defendant knew the information he supplied to commence the prosecution was false, failed to set forth a full, fair and complete statement of the facts, or concealed facts. *Brooks v. H&H Creek*, 223 Ga. App. 635, 638 (1) (d) (478 SE2d 451) (1996); *Willis*, 220 Ga. App. at 353 (4). The reliability of a defendant's source of information is relevant to the issue of the reasonableness of the defendant's belief, *Willis*, 220 Ga. App. at 351 (1) (b), and a fact question can be raised where the existence of probable cause turns upon the credibility of a witness who gave the defendant information about the incident. *Harmon*, 135 Ga. App. at 127 (1).

Lagroon and Barnett have pointed to evidence from which a jury could find that Sheriff Lawson and Deputy Foskey knew at the time that the witness statements were false or unreliable, yet proceeded to obtain arrest warrants and pursue the prosecutions. In addition, Lagroon and Barnett have pointed to evidence from which a jury could find that Deputy Hancock instructed Deputy Foskey to obtain an arrest warrant for Barnett without questioning Barnett about the charged offense and kept from the District Attorney potentially exculpatory evidence that would have altered the way in which the District Attorney presented the case to the grand jury. This evidence rebuts the prima facie evidence of probable cause that arose upon the grand jury's return of charges against them and creates a question of fact about the element of want of probable cause.

(b) *Malice*.

The malice needed for a malicious prosecution action may be inferred from circumstances such as a "total lack of probable cause," OCGA § 51-7-44, or actions of a defendant "done with a reckless disregard for or conscious indifference to the rights of the plaintiff." *Willis*, 220 Ga. App. at 352 (3) (citation and punctuation omitted). See generally *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002) (acknowledging difference between malice in malicious prosecution context

20

and malice in official immunity context). As discussed in Division 2, supra, Lagroon and Barnett have presented evidence from which a jury could find that the three defendants acted with malice.

*Judgment affirmed in part, reversed in part. Andrews, P. J., and Ray, J., concur in the judgment only.*