[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10312
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-03303-RWS

CAROLINE CROLAND,

Plaintiff - Appellee,

versus

CITY OF ATLANTA,

Defendant,

STEPHENSON CAMILLE,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(July 19, 2019)

Before TJOFLAT, BRANCH, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, City of Atlanta police officer Stephenson Camille appeals the district court's denial of his motion for summary judgment in Plaintiff Caroline Croland's civil action under 42 U.S.C. § 1983 and Georgia law. Officer Camille contends he is entitled to qualified immunity and to Georgia official immunity. Reversible error has been shown; we affirm in part, vacate in part, and remand.

I.      BACKGROUND

This case arises from Plaintiff's arrest in downtown Atlanta on the afternoon of 1 June 2014. Plaintiff is an active member of two volunteer groups: "Food Not Bombs," which distributes meals to the homeless in Woodruff Park most Sunday afternoons, and "Cop Watch of East Atlanta" ("Cop Watch"), a "watch-dog group focused on increasing police accountability and preventing police brutality by filming police officers in public."

On 1 June, Plaintiff and members of her volunteer groups were distributing food in Woodruff Park. Officer Camille was also present in the park as part of his

2

routine foot patrol.  Plaintiff says Officer Camille "hovered" around the Food Not Bombs table for an hour and a half.  During this time, Cop Watch volunteers followed Officer Camille and filmed him using their cell phones.  One of these video recordings was submitted into evidence and shows the pertinent events leading up to and during Plaintiff's arrest.

The video shows Officer Camille being approached by one of Plaintiff's fellow volunteers.  The volunteer (not Plaintiff) asked Officer Camille to leave the park and told Officer Camille that he was not wanted there.  Officer Camille refused to leave and responded that he had a right to remain in a public park.  The volunteer then continued -- for several minutes -- to make generally mocking and insulting comments to Officer Camille and to ask Officer Camille repeatedly to leave the area.  For the most part, Officer Camille ignored the comments, but also responded by providing his name and badge number.

Officer Camille then moved away from the volunteer and from the camera. Over the next several minutes, Officer Camille walked in and around the area where food was being distributed.  As he did so, he conversed casually and laughed with other people present in the park.  In the background, people can be seen and heard laughing, talking, singing, and playing drums.

Officer Camille then resumed his position close to the Food Not Bombs table -- and only a few feet from the camera -- and stood observing the area for a

couple of minutes.  Plaintiff can then be heard talking off-camera to a fellow volunteer, Vincent Castillenti.  Plaintiff said (in a normal tone of voice) that she was "so angry, oh my god, so angry," referring to Officer Camille's presence. Castillenti urged Plaintiff to "start a chant," to which Plaintiff replied, "I don't want to start a chant."  Castillenti then told Plaintiff to "scream it out and people will go along with you.  They'll like fucking make him understand that he's a piece of shit."  Plaintiff said, "No, nothing could make him understand that."

A few seconds later, Plaintiff said in a louder-than-normal voice, "It's like we can't like share a . . . meal with people every Sunday without state harassment!"  Officer Camille turned his back and started to walk away from Plaintiff.  As he did, Plaintiff (in the presence of others in her group) yelled -- with increasing volume -- "Why?!  Why?!  WHY?!  WHY?!  WHY?!"  And then yelled the demand, "ANSWER ME!!"  As Plaintiff yelled her questions and her demand at Officer Camille, one or two people looked up, but no volunteers or members of the public reacted visibly in any other way to Plaintiff's outburst.  Nor did Plaintiff appear to move physically toward Officer Camille, such that she would have been on camera.

In response to Plaintiff's yelling, Officer Camille turned to face Plaintiff, walked slowly about 11 steps toward Plaintiff, and told Plaintiff that she was under arrest for "disorderly conduct in the park."  Plaintiff was charged with violating

Atlanta City Code § 106-81(3), which makes it unlawful to cause, provoke, or engage in a fight or riotous conduct.

Plaintiff filed suit against Officer Camille in his individual capacity,[1] alleging that she was arrested without probable cause and in retaliation for her protected speech -- in violation of her rights under the First and Fourth Amendments. Plaintiff also asserted against Officer Camille state law claims for assault and battery, false arrest, false imprisonment, and malicious prosecution. The district court denied Officer Camille's motion for summary judgment: a motion grounded on federal qualified immunity and state official immunity.

II.    DISCUSSION

A.  Constitutional Claims & Qualified Immunity

We review de novo a district court's denial of a motion for summary judgment based on qualified immunity, "drawing all inferences and viewing all of the evidence in a light most favorable to the nonmoving party." Gilmore v.

_____

[1] Plaintiff also named as a defendant the City of Atlanta. The district court later granted the parties' joint motion to dismiss the City. Plaintiff's claims against the City are thus not before us in this appeal.

Hodges, 738 F.3d 266, 272 (11th Cir. 2013). When a video recording exists of the pertinent events -- as in this case -- we "view[] the facts in the light depicted by the videotape." See Scott v. Harris, 550 U.S. 372, 380-81 (2007). Because we construe the evidence in favor of the nonmoving party, "material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity." Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018). To avoid summary judgment on qualified immunity, Plaintiff must show both that Officer Camille violated a federal right and that the right was already clearly established when Officer Camille acted. See id.

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quotations and alterations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (emphasis added). "[Q]ualified immunity will be denied only

6

if the preexisting law by case law or otherwise makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Gates, 884 F.3d at 1297 (quotation and alteration omitted).

Broadly speaking, a warrantless arrest made without probable cause violates the Constitution and is actionable under section 1983. See id. An officer has probable cause to arrest when, "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

"Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." Gates, 884 F.3d at 1298. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest.'" Id. (alteration omitted). The reasonable-officer standard is an objective one; we do not consider the officer's subjective intent. Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Id.

7

We stress that "[s]howing arguable probable cause does not . . . require proving every element of a crime." Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013) (citing Brown, 608 F.3d at 735-36). But "a constitutional arrest must be based on a reasonable belief that a crime has occurred, rather than simply unwanted conduct." Id. Thus, qualified immunity will not protect an officer who makes an arrest under circumstances "where it is clear that the conduct in question does not rise to the level of a crime, under the facts known at the time." Id. at 978-79 (affirming the denial of qualified immunity when no evidence existed from which a reasonable officer could have believed that the arrestee's conduct violated a local disorderly-conduct ordinance).

Officer Camille would be entitled to qualified immunity if arguable probable cause existed to arrest Plaintiff for any offense. See Brown, 608 F.3d at 735. We thus consider whether arguable probable cause existed to arrest Plaintiff under any offense under local ordinance or Georgia statute.

The disorderly-conduct ordinance for the City of Atlanta makes it unlawful, among other things, for a person to "[a]ct in a violent or tumultuous manner toward another whereby any person is placed in fear of the safety of such person's life, limb or health;" or to "[c]ause, provoke or engage in any fight, brawl or riotous

8

conduct so as to <u>endanger the life, limb, health or property of another</u>."[2]  CITY OF

ATLANTA, GA., CODE § 106-81(1), (3) (2014) (emphasis added).  In a similar way,

Georgia's disorderly-conduct statute makes it unlawful for a person to act "in a

violent or tumultuous manner toward another person whereby such person is

<u>placed in reasonable fear of the safety of such person's life, limb, or health</u>."

O.C.G.A. § 16-11-39(1) (emphasis added).

Under Georgia statute, a person commits the misdemeanor offense of

"inciting to riot" if he "with intent to riot does an act or engages in conduct which

urges, counsels, or advises others to riot, at a time and place and under

circumstances which produce a clear and present danger of a riot."  O.C.G.A. § 16-

11-31; <u>see Powell v. State</u>, 462 S.E.2d 447, 448 (Ga. Ct. App. 1995).  A "riot"

occurs when "two or more persons" commit "an unlawful act of violence or any

other act in a violent and tumultuous manner . . . ."  O.C.G.A. § 16-11-30(a).

On this record, no objective officer under the same circumstances and

possessing Officer Camille's knowledge could have believed reasonably that

probable cause existed to arrest Plaintiff.  Plaintiff's conduct consisted of yelling at

Officer Camille in front of a group of people.  Plaintiff made no physical gestures

---

[2] A person also commits the offense of disorderly conduct if he "[d]irect[s] fighting words toward another, that is, words which by their very nature tend to incite an immediate breach of the peace."  CITY OF ATLANTA, GA., CODE § 106-81(6) (2014).  That Plaintiff's words constituted no "fighting words" within the meaning of the local ordinance is clear.

9

with her hands and took no steps toward Officer Camille, who was then about 11 steps away.[3]  Although a couple of other volunteers had objected verbally to Officer Camille's presence in the park, those volunteers had also made no physical threats or physically aggressive movements.  The video also shows that the overall demeanor of the crowd was calm.

Even to the extent that an objective officer could have believed that Plaintiff was attempting to get others to join her in a "chant," an objective officer -- under the circumstances -- could not have believed reasonably that Plaintiff was engaged in (or about to engage in) conduct that was likely to "endanger the life, limb, health or property of another" or to place someone in "reasonable fear of the safety of such person's life, limb, or health": a critical element of a disorderly-conduct offense.  See CITY OF ATLANTA, GA., CODE § 106-81(1), (3); O.C.G.A. § 16-11-39(1).  Nor could an objective officer under the circumstances have believed reasonably that there existed "a clear and present danger of a riot."  See O.C.G.A. §§ 16-11-30(a), 16-11-31.

At the time of Plaintiff's arrest in 2014, the law was clear that yelling about police harassment in front of a crowd -- by itself -- was not enough to give rise to

---

[3] Officer Camille says that, when Plaintiff yelled, she balled up her fist.  Plaintiff denies flatly that her fists were balled up or that she made any other physical gestures directed at Officer Camille.  Because the video recording does not "blatantly contradict[]" Plaintiff's assertion, we accept as true Plaintiff's version of the facts for purposes of summary judgment.  See Scott, 550 U.S. at 380-81.

10

probable or arguable probable cause to arrest.  The Supreme Court made clear that a person may not be charged with a criminal offense for the use of spoken words alone, unless those words rise to the level of "fighting words": words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace."  See Gooding v. Wilson, 405 U.S. 518, 521-22 (1972) (striking down as facially invalid a Georgia breach-of-peace statute not limited to fighting words, explaining that "[t]he constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.'").  No "fighting words" from Plaintiff were involved in this case.

In Woodward v. Gray, a Georgia appellate court concluded that no probable cause existed to arrest a woman for disorderly conduct under Georgia statute or local ordinance when the woman yelled loudly about police harassment for several minutes (in front of a crowd and using expletives) and refused the officer's command to the leave the area.[4]  527 S.E.2d 595, 597, 599-600 (Ga. Ct. App. 2000), overruled in part on other grounds by Stryker v. State, 677 S.E.2d 680 (Ga. Ct. App. 2009).  The state court said that "[b]eing obnoxious, loud, arguing with the police, and refusing to move more than eight feet from the police on command

---

[4] The city ordinance involved in Woodward provided that a person could be charged with disorderly conduct if he, among other things, "(1) Performs an unlawful act of violence or performs any other act in such a violent and tumultuous manner that the public peace and tranquility are disturbed; [or] (2) Verbally or physically harasses, menaces, or intimidates a person to the disturbance of the public peace; . . ."  527 S.E.2d at 597 (alteration omitted).

11

where such distance does not interfere with the performance of police duties does not constitute probable cause to believe that disorderly conduct has occurred." Id. at 597.

Viewing this record in the light most favorable to Plaintiff, it was clear -- such that objectively "every reasonable official would have understood" in 2014 -- that Plaintiff's conduct did not rise to the level of a crime and, thus, no arguable probable cause existed to arrest Plaintiff. See Wilkerson, 736 F.3d at 978. Given the assumed facts, we accept that summary judgment based on qualified immunity is not demanded at this stage in the proceedings.

### B.  State Law Claims & Official Immunity

We review de novo a district court's denial of summary judgment based on official immunity. Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012). "Unlike qualified immunity under federal law, we must inquire into [the officer's] subjective intent to determine whether he has official immunity under Georgia law." Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007).

Under the Georgia Constitution, law enforcement officers are entitled to official immunity from suit and liability unless they perform their discretionary

12

duties "with actual malice or with actual intent to cause injury in the performance of their official functions." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994) (citing GA. CONST. art. I, § II, para. IX(d)).  That Officer Camille was engaged in a discretionary function at all times pertinent to this appeal is undisputed.

For purposes of official immunity, "actual malice" means "'express malice,' i.e., a deliberate intention to do wrong, and does not include 'implied malice', i.e., the reckless disregard for the rights or safety of others." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007) (quotations omitted).  "A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs." Id.  We have described this as a "demanding standard." Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016).

"Actual malice requires more than 'harboring bad feelings' or 'ill will' about another; rather, ill will must also be combined with the intent to do something wrongful or illegal." Wyno v. Lowndes Cnty., 824 S.E.2d 297, 304 (Ga. 2019) (emphasis added) (quotations omitted) (citing Adams v. Hazelwood, 520 S.E.2d 896, 898 (1999)).  In other words, "the subjective mental state of a public officer or employee is irrelevant unless that mental state prompts the public officer or employee to intend a legally unjustifiable action." Adams, 520 S.E.2d at 898.

13

As "actual malice" means an intent to act contrary to law, so the phrase "actual intent to cause injury" -- for purposes of Georgia's official immunity doctrine -- means "an actual <u>intent to cause harm</u> to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." <u>Kidd v. Coates</u>, 518 S.E.2d 124, 125 (Ga. 1999) (emphasis added) (quotations omitted) (concluding that officers who shot a man in self-defense were entitled to official immunity because the officers lacked "actual tortious intent to harm" and, instead, "acted only with the justifiable intent which occurs in every case of self-defense."). "This definition of intent contains aspects of malice, perhaps a wicked or evil motive." <u>Id</u>.

We stress that because "actual malice" does not include "implied malice," the court will not "speculate [or] make assumptions" about improper motive; a mere "inference of malice is insufficient to overcome [an] immunity defense." <u>Watkins v. Latif</u>, 744 S.E.2d 860, 863 (Ga. Ct. App. 2013); <u>Conley v. Dawson</u>, 572 S.E.2d 34, 37-38 (Ga. Ct. App. 2002).

A showing of improper motive requires strong record evidence of improper motive. <u>Compare Watkins</u>, 744 S.E.2d at 863 (rejecting plaintiff's argument that it "might be inferred" -- based on the timing of his arrest -- that he was arrested in retaliation for calling 911 during a traffic stop), <u>and Conley</u>, 572 S.E.2d at 37-38 (no improper motive or actual malice shown based on evidence that an officer

14

discounted a witness's statement that a driver was at-fault, excluded the statement from the police report, and lost the witness's contact information and that the officer also had a business relationship with the driver's employer), with Lagroon v. Lawson, 759 S.E.2d 878, 883 (Ga. Ct. App. 2014) (a jury could conclude reasonably that officers acted with actual malice where direct evidence existed that the officers coerced teenage witnesses to give false statements, used the statements as grounds for plaintiffs' arrests "despite knowing of the statements' falsity, inaccuracy or unreliability," sought grand jury charges "despite knowing that [plaintiffs] had not committed any offenses," used an interrogation to question plaintiff about her estranged husband instead of about the case, "bragged to [plaintiff] about testifying against her in her upcoming divorce trial," and concealed exculpatory evidence from the district attorney for nine months), and Jordan, 487 F.3d at 1357 (affirming the denial of official immunity where direct evidence existed that an officer caused the issuance of an arrest warrant as a means to get plaintiff to come to the jail so that the officer could collect on a personal civil debt purportedly owed to the officer).

That an officer's decision to arrest may be "misguided," "mistaken," "flawed," or unsupported by probable cause is not enough to overcome official immunity. See Mercado v. Swoope, 798 S.E.2d 291, 294 (Ga. Ct. App. 2017) ("Even when an arresting officer operates on a mistaken belief that an arrest is

15

appropriate, official immunity still applies."); Marshall v. Browning, 712 S.E.2d 71, 75 (Ga. Ct. App. 2011) (even if officer was "mistaken" that the alleged acts constituted a crime or was motivated by her personal feelings about the suspect, nothing evidenced that the officer intended to do wrong); Reed v. DeKalb Cnty., 589 S.E.2d 584, 587-88 (Ga. Ct. App. 2003) ("Absent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion [to arrest] even when the decision to effectuate the arrest is flawed."); Todd v. Kelly, 535 S.E.2d 540, 542-43 (Ga. Ct. App. 2000) (concluding that an officer was entitled to official immunity because, although his decision to seek arrest warrants "may have been misguided," nothing evidenced that he acted with actual malice).

Nor is "evidence demonstrating frustration, irritation, and possibly even anger . . . sufficient to penetrate official immunity."  Selvy v. Morrison, 665 S.E.2d 401, 406 (Ga. Ct. App. 2008) (no actual malice or intent to injure shown when officer used profanity, referred to plaintiff as a "bitch," made derogatory comments about plaintiff's past "boyfriends," threatened to kick in plaintiff's door, and used force to carry out plaintiff's arrest, injuring plaintiff's minor son in the process); Tittle v. Corso, 569 S.E.2d 873, 877 (Ga. Ct. App. 2002) (officer's use of profanity, threats to blow the suspect's head off or to unleash a police dog if the suspect moved, and slamming the suspect against the police car was insufficient to demonstrate actual malice).

16

An officer is <u>unentitled</u> to summary judgment on official immunity grounds, however, where sufficient evidence exists that -- at the time of an arrest -- the officer had <u>actual subjective knowledge</u> that no crime was committed and, thus, acted with a deliberate intent to break the law.  See <u>Lagroon</u>, 759 S.E.2d at 883 (officers unentitled to official immunity when direct evidence existed that the officers arrested plaintiffs and sought grand jury charges "despite knowing that [plaintiffs] had not committed any offenses, thereby establishing that the officers deliberately intended to do a wrongful act." (quotations omitted)); <u>City of Atlanta v. Shavers</u>, 756 S.E.2d 204, 207 (Ga. Ct. App. 2014), overruled in part on other grounds by <u>Rivera v. Washington</u>, 784 S.E.2d 775 (Ga. 2016) (affirming denial of summary judgment based on official immunity where officer arrested plaintiff despite knowing -- based on a witness's express statement and on clear video surveillance footage showing directly that plaintiff had taken no items from the store -- that no probable cause existed); <u>Bateast v. DeKalb Cnty</u>., 572 S.E.2d 756, 758 (Ga. Ct. App. 2002) (no official immunity when officers arrested plaintiff for giving a false name and date of birth when there existed direct evidence that the officers had verified successfully plaintiff's identity before the arrest and, thus, knew that plaintiff had committed no crime).

As evidence of Officer Camille's improper subjective intent, Plaintiff says that, one week before her arrest, Plaintiff and other Cop Watch volunteers filmed

17

several police officers -- including Officer Camille -- as the officers searched and detained three men in Woodruff Park. Plaintiff says that, on that day, Officer Camille appeared "upset" about being filmed and that Officer Camille referred to the volunteers as "just a bunch of leeches trying to game the system." Plaintiff contends that, one week later, Officer Camille patrolled the park and ultimately arrested her unlawfully in retaliation for Plaintiff's having filmed Officer Camille the previous week.

Against the backdrop of cases applying Georgia's official immunity doctrine, we cannot conclude (by inference) from the evidence in this record that Officer Camille's conduct rose to the level of actual malice or an actual intent to injure Plaintiff. Evidence sufficient to overcome immunity in Georgia must do more than maybe give rise to a suspicion of improper motive.

That Officer Camille patrolled Woodruff Park on 1 June is no evidence of actual malice or actual intent to cause injury. Officer Camille was on-duty that day, the public park was within his routine assigned "foot beat," and Officer Camille says he observed a large crowd in the park: a legally justifiable reason to patrol.

As explained more fully in Part II(A) of this opinion, we have determined that the current record (viewed in Plaintiff's favor) shows that no probable cause existed to arrest Plaintiff and, thus, that Plaintiff's arrest was unlawful. But

18

Georgia law makes clear that -- to avoid summary judgment on official immunity grounds -- for Plaintiff to show merely that Officer Camille lacked probable cause to arrest or that his decision to arrest her was "mistaken" or even "reckless" is not enough.  See, e.g., Mercado, 798 S.E.2d at 294; Marshall, 712 S.E.2d at 75; Murphy, 647 S.E.2d at 60.

Nowhere in this record is evidence presented that Officer Camille told people -- before or after Plaintiff's arrest -- that he intended to arrest Plaintiff to retaliate for her filming him a week earlier or just to hurt Plaintiff.  Nor is evidence present that Officer Camille at any time threatened Plaintiff with some punishment for her filming him.  And no other evidence has been presented that is strong enough to make it probable that Officer Camille actually acted with the necessary intent to do something illegal or intent to cause harm.

Officer Camille did not arrest the other volunteers who had also engaged in filming and engaged in criticizing him.  Even if an erroneous decision, Officer Camille's decision to arrest Plaintiff was not capricious or entirely unsupported.  In the context of other things on the day of the arrest, Plaintiff's conduct was singular; Officer Camille arrested Plaintiff only after she (at him and in front of a crowd) yelled about claimed unwelcome police presence -- including a shouted public demand for him to account to her for his policing activity.  Unlike the officers who were denied official immunity in Lagroon, Shavers, and Bateast, nothing evidences

19

adequately that Officer Camille had actual subjective knowledge at the time of Plaintiff's arrest that Plaintiff had plainly committed no offense or knowledge that probable cause was doubtlessly lacking.  See Lagroon, 759 S.E.2d at 883; Shavers, 756 S.E.2d at 207; Bateast, 572 S.E.2d at 758.

That Officer Camille might have been frustrated, irritated, or angry with Plaintiff is immaterial unless Plaintiff can show that Officer Camille's subjective mental state prompted him to intend to act unlawfully.  See Wyno, 824 S.E.2d at 304; Adams, 520 S.E.2d at 898; Selvy, 665 S.E.2d at 406.  Given the Georgia immunity precedents and on this record -- without more, we cannot rightly "infer" or "speculate" that Officer Camille arrested Plaintiff in retaliation for her having filmed him a week earlier.

Because Plaintiff has offered insufficient evidence of actual malice or of actual intent to cause injury, Officer Camille is entitled to official immunity from Plaintiff's state-law claims.  We vacate in part the district court's denials of immunity and remand for entry of summary judgment in favor of Officer Camille on Plaintiff's claims under Georgia law.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

20